106 P.3d 274 (2005)
125 Wash.App. 778
STATE of Washington, Respondent,
v.
Naomi KINNEY, Appellant.
No. 53093-3-I.
Court of Appeals of Washington, Division 1.
February 14, 2005.
*275 David Stuart McEachran, Hilary A. Thomas, Bellingham, WA, for Respondent.
Christopher Gibson, Attorney at Law, Seattle, WA, for Appellant.

Published in Part Opinion
COLEMAN, J.
Naomi Kinney made repeated attempts to kill Timothy Bowman before she succeeded by shooting him. Kinney pleaded guilty to two counts of attempted murder and one count of murder. Pursuant to RCW 9.94A.589(1)(b), the court determined that the attempts, one by poisoning and one by smothering, were "separate and distinct" and accordingly ordered consecutive sentences. Kinney contends this violates Blakely v. Washington, ___ U.S. ___, 124 S.Ct. 2531, 2536, 159 L.Ed.2d 403 (2004), by increasing her punishment based on facts not found by a jury. But the relationship between the two crimes was not an aggravating factor increasing the punishment for either crime. There was no Blakely error. We affirm.[1]

FACTS
On March 4, 2002, police conducted a welfare check on Timothy Bowman after he did not appear at work or contact the college where he taught. They found Bowman's body lying in bed in the house he and Naomi Kinney lived in with their children. The cause of death was a gunshot wound to the head. From neighbors, police learned that Bowman and Kinney had been having domestic difficulties, and Bowman had feared that Kinney was poisoning him.
Police contacted Kinney. After initially denying involvement, she eventually admitted killing Bowman. She signed a written statement detailing a series of attempts to kill Bowman that had begun on February 14. Prompted by her mother in Oregon, Kinney first tried to kill Bowman by giving him an overdose of sleeping pills in a chocolate heart cookie. When Bowman woke up, unaware of the attempt on his life, Kinney contacted her mother again and, on her advice, unsuccessfully tried to suffocate Bowman with a pillow and a plastic bag later that night. Over the following days, Kinney made additional attempts by using sleeping pills, striking Bowman on the head while he was asleep, and trying to set his truck on fire while he was asleep in it.
Bowman became suspicious that Kinney was trying to harm him. After further conversations with her mother, Kinney decided to shoot Bowman. On March 3, while he was asleep, Kinney got the children out of the house and shot Bowman while she was talking to her mother on the telephone.
The State charged Kinney with six counts of attempted first degree murder and one count of first degree murder. Kinney eventually entered guilty pleas to two counts of attempted first degree murder as charged in counts I and II of the original information and first degree murder as charged in count VII. The State agreed to recommend sentences of 240 months for the completed murder and 180 months for each attempt, each sentence to be served consecutively for a total of 600 months. Before sentencing, defense counsel filed a memorandum, arguing that counts I and II were the same criminal conduct and therefore constituted a single offense. The State contended that the two offenses were separate criminal conduct. The trial court agreed with the State and sentenced Kinney to consecutive standard range sentences in accordance with the State's recommendation. Kinney appeals.[2]

Consecutive Sentences for Serious Violent Crimes under Blakely
RCW 9.94A.589(1)(b) requires consecutive sentences where a defendant is sentenced for two or more serious violent felonies arising from "separate and distinct criminal conduct."[3] Citing Blakely, ___ U.S. at ___ ___, *276 ___, 124 S.Ct. at 2537-39, 2543 and Apprendi v. New Jersey 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), Kinney argues that she was entitled to a jury trial on the facts necessary to determine that the two attempted murders were separate conduct.
In Apprendi, the Supreme Court held a criminal defendant's Sixth Amendment right to a jury trial mandates that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490, 120 S.Ct. 2348. In Blakely, the Court clarified that "[t]he `statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. In other words, the relevant `statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." Blakely, ___ U.S. at ___, 124 S.Ct. at 2537 (emphasis in original, citations omitted).
We conclude there was no Blakely violation. Neither Blakely nor Apprendi purport to create a jury trial right to the determination as to whether to impose consecutive sentences. Both Blakely and Apprendi involved a conviction for a single count. And the basis for the Blakely and Apprendi holdings does not implicate consecutive sentencing.
The Apprendi majority relied on Jones v. United States, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) to characterize the right at issue as a right to a jury determination of all facts necessary to establish a crime:
We do not suggest that trial practices cannot change in the course of centuries and still remain true to the principles that emerged from the Framers' fears `that the jury right could be lost not only by gross denial, but by erosion.' Jones, 526 U.S. at 247-248, 119 S.Ct. 1215, 143 L.Ed.2d 311. But practice must at least adhere to the basic principles undergirding the requirements of trying to a jury all facts necessary to constitute a statutory offense, and proving those facts beyond reasonable doubt.
Apprendi, 530 U.S. at 483-484, 120 S.Ct. 2348 (footnote omitted, emphasis added).
That the Apprendi court was concerned with facts used to enhance a sentence for an individual crime was underscored when the court held the possibility of a defendant receiving consecutive sentences was irrelevant to determining whether the enhanced sentence on the count in issue was constitutional. "The sentences on counts 3 and 22 have no more relevance to our disposition than the dismissal of the remaining 18 counts." Apprendi, 530 U.S. at 474, 120 S.Ct. 2348.
Apprendi's progeny have shown the same focus. In Ring v. Arizona, 536 U.S. 584, 609, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), the Court held that Arizona's statutory factors necessary for imposition of the death penalty were "`the functional equivalent of an element of a greater offense'" (quoting Apprendi, 530 U.S. at 494 n. 19, 120 S.Ct. 2348). Similarly, Blakely limited the imposition of punishment beyond the high end of the sentencing reform act standard range for a single offense, based on an underlying concern that a state not circumvent the right to trial by jury by effectively reclassifying offense elements as sentencing factors or by converting a separate crime not proved to a jury into a sentence enhancement. Blakely, ___ U.S. at ____ n. 6, 2539 - 40 n. 11, 124 S.Ct. at 2537 n. 6, 2539-40 n. 11. We conclude that determining that two crimes are separate offenses under RCW 9.94A.589(1)(b) does not operate to elevate either crime to the equivalent of a greater offense merely because, as here, it results in two standard range sentences running consecutively.
We are in agreement with the many jurisdictions that have held that Apprendi does not apply to the decision to impose consecutive sentences. See, e.g., United States v. Harrison, 340 F.3d 497, 500 (8th Cir.2003); United States v. Lafayette, 337 F.3d 1043, 1049-50 (D.C.Cir.2003); United States v. *277 Hernandez, 330 F.3d 964, 982 (7th Cir.2003); United States v. Davis, 329 F.3d 1250, 1254 (11th Cir.2003); United States v. Chorin, 322 F.3d 274, 278-279 (3d Cir.2003); People v. Groves, 107 Cal.App.4th 1227, 1230-31, 132 Cal.Rptr.2d 744 (2003); United States v. Buckland, 289 F.3d 558, 568 (9th Cir.2002); United States v. Lott, 310 F.3d 1231, 1242-43 (10th Cir.2002); State v. Bramlett, 273 Kan. 67, 41 P.3d 796 (2002); United States v. White, 240 F.3d 127, 136 (2d Cir.2001); People v. Wagener, 196 Ill.2d 269, 256 Ill.Dec. 550, 752 N.E.2d 430, 441 (2001); C.f. State v. Fuerte-Coria, 196 Or.App. 170, 100 P.3d 773 (2004) (claimed Blakely error as to consecutive sentences not reviewable for the first time on appeal because making crimes consecutive does not implicate the relevant statutory maximum in any obvious way).
The consecutive sentencing decision in RCW 9.94A.589 based on a determination that multiple serious violent offenses are separate criminal conduct does not involve facts, in the words of the Apprendi majority, "necessary to constitute a statutory offense." Apprendi, 530 U.S. at 483, 120 S.Ct. 2348. A sentencing court can make that consecutive sentencing decision only after the defendant has already been validly found to have committed two or more such offenses beyond a reasonable doubt. Facts affecting the potential punishment for each individual offense are subject to Blakely and Apprendi, but this principal does not extend to whether standard range sentences for serious violent offenses for which the defendant was properly found guilty will be served consecutively under RCW 9.94A.589(1)(b).
We affirm Kinney's sentence.[4] The balance of this opinion has no precedential value. Accordingly, pursuant to RCW 2.06.040, it shall not be published.
WE CONCUR: AGID, J. and APPELWICK, J.
NOTES
[1] We reject Kinney's other contentions in the unpublished portion of this opinion.
[2] Kinney does not contend that the attempted murders constituted the same criminal conduct as the completed crime.
[3] This case does not involve sentences for offenses that are not serious violent crimes and thus may be run consecutively only under the exceptional sentence provisions of the Sentencing Reform Act of 1981. See RCW 9.94A.535 and RCW 9.94A.589(1)(a).
[4] Because of our resolution of this issue, it is unnecessary to address the State's alternative contentions that any error was harmless or that by placing the facts before the sentencing court as the basis of her contention that the crimes were not separate conduct, Kinney necessarily stipulated to their accuracy and use.