Norman L. VANDERGRIFF, Appellant,

v.

STATE of Alaska, Appellee.

No. A–8946.

Court of Appeals of Alaska.

Dec. 16, 2005.

Eric Hedland, Assistant Public Defender, Juneau, and Barbara K. Brink, Public Defender, Anchorage, for the Appellant.

Timothy W. Terrell, Assistant Attorney General, Office of Special Prosecutions and

Appeals, Anchorage, and David W. Márquez, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

STEWART, Judge.

From December 2003 through February 2004, Norman L. Vandergriff burglarized remote residences outside of Petersburg. He stole several items including boats, an outboard motor, and firearms. He forged a check made payable to himself and purportedly signed by one of the victims. The grand jury indicted Vandergriff on nine felony counts.

The parties reached a plea agreement that called for Vandergriff to plead to three class C felonies: second-degree theft; second-degree forgery; and second-degree burglary.[1] There was no agreement on the sentence to be imposed. Under the sentencing law that applied to Vandergriff's case, he faced a presumptive 3–year term on each count because he had five prior felony convictions.[2]

The superior court imposed a composite 9–year term with 3 years suspended, a net 6–year term to serve. In this sentence appeal, Vandergriff advances several reasons why the superior court erred by imposing this sentence. We reject each claim and affirm the judgment of the superior court.

### Background facts and proceedings

The grand jury indicted Vandergriff on four counts of second-degree theft, one count of second-degree forgery, two counts of first-degree burglary,[3] and two counts of first-degree vehicle theft.[4] These charges arose after an investigation by the Alaska State Troopers showed that from December 2003 through February 2004, Vandergriff broke into two remote cabins near Petersburg, stole three firearms, stole two boats, stole an outboard motor, and forged a check bearing the purported signature of one of the victims.

The State and Vandergriff negotiated a plea agreement. Vandergriff agreed to plead to three counts: second-degree theft; second-degree burglary; and second-degree forgery. The State agreed not to pursue any aggravating factors, and the parties agreed not to restrict the court's power to impose the sentences on any count concurrent with or consecutive to any other count.

Vandergriff had five prior felony convictions. His first felony conviction occurred in 1970 in Virginia. His most recent felony conviction occurred in 2003 in Florida. Two of the five convictions were burglary charges; three were forgery charges.

Superior Court Judge Michael A. Thompson imposed a 3–year term for second-degree theft, a consecutive 3–year term for second-degree burglary, and a consecutive 3–year term, all suspended, for forgery. Thus, Judge Thompson imposed a composite 9–year term with 3 years suspended. Vandergriff appeals.

### Discussion

*Does Blakely v. Washington restrict a sentencing court's authority to impose sentences consecutively?*

█ Vandergriff argues that the United States Supreme Court's decision in *Blakely v. Washington*[5] restricts a sentencing judge's authority to impose consecutive sentences exceeding the prescribed presumptive term for the defendant's most serious offense or the maximum term for the defendant's most serious offense. But under former AS 12.55.025(e) and (g), a sentencing judge's authority to impose consecutive sentences did not require proof of aggravating factors or other special factual circumstances.

*Blakely* rests on a principle that the Supreme Court recently repeated in *United*

---

1. AS 11.46.130(a)(2) & (b); AS 11.46.505(a) & (b); and AS 11.46.310(a) & (b), respectively.

2. *See* former AS 12.55.125(e)(2).

3. AS 11.46.300.

4. AS 11.46.360(a)(1).

5. 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

*States v. Booker:*[6] "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt."[7]

Vandergriff argues that any fact-finding by the superior court that justified the composite term exceeding the 3–year presumptive term or the 5–year maximum term is governed by *Blakely.*

Except for prior convictions, *Blakely* declares that when a judge's sentencing authority rests on facts not established by a guilty verdict or by the defendant's plea or by the defendant's express concession, the facts must be proved to a jury beyond a reasonable doubt.[8] But Judge Thompson's authority to impose consecutive sentences did not depend on proof of additional facts. His authority to impose consecutive sentences was governed by former AS 12.55.025(e) and (g).[9] Except for exceptions not applicable here, those subsections gave Judge Thompson the discretion to impose the sentences consecutively or concurrently.

We recently addressed the application of *Blakely* to consecutive sentencing in *Edmonds v. State.*[10] We held that *Blakely* did not limit a judge's authority to impose consecutive sentences with the exception of one potential issue that we did not decide in Edmond's case: Is the fact finding called for by the *Neal–Mutschler* rule subject to the procedural requirements of *Blakely?* The *Neal–Mutschler* rule is a common-law sentencing rule announced by our supreme court; before a sentencing judge imposes consecutive sentences that total more than the maximum sentence for a defendant's most serious offense, the judge must expressly find that the total sentence is necessary to protect the public.[11]

Judge Thompson was aware of the *Neal–Mutschler* rule; he discussed it during sentencing and elected to impose a term greater than the 5–year maximum for a class C felony in order to protect the public. Vandergriff mentions the rule in his argument, but he does not cite any cases that discuss whether *Blakely* applies to the decision to impose sentences consecutively. We mentioned several of those cases in *Edmonds,* a decision we issued after Vandergriff filed his brief in this case.[12]

In *Apprendi* and *Blakely,* a judge's authority to impose consecutive sentencing was not an issue because Apprendi received concurrent sentences and Blakely was sentenced for a single crime.[13] In *Blakely,* the court

---

**6.** 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

**7.** *Booker,* 125 S.Ct. at 756.

**8.** *Blakely,* 542 U.S. at 301–02, 124 S.Ct. at 2536.

**9.** These two sections were repealed in 2004 and replaced with AS 12.55.127, which went into effect on July 1, 2004. *See* ch. 125, § 9, SLA 2004. Although Vandergriff was sentenced in August 2004, AS 12.55.127 applies to offenses committed on or after July 1, 2004. *See* ch. 125, § 8, SLA 2004.

**10.** 118 P.3d 17 (Alaska App.2005). *See also Wright v. State,* 46 P.3d 395, 398 (Alaska App. 2002) (rejecting Wright's claim that AS 12.55.025(e) was unconstitutional under *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)).

**11.** *See Neal v. State,* 628 P.2d 19, 21 (Alaska 1981) ("Our past decisions imply that where consecutive sentences for two or more counts exceed the maximum sentence for any single count, the sentencing judge should make a formal finding that confinement for the combined term is necessary to protect the public.") (citing *Mills v. State,* 592 P.2d 1247, 1248 (Alaska 1979), and *Mutschler v. State,* 560 P.2d 377, 381 (Alaska 1977)); *Powell v. State,* 88 P.3d 532, 537 (Alaska App.2004) (applying the *Neal–Mutschler* rule based on belief defendant was a poor candidate for rehabilitation).

**12.** *See Edmonds,* 118 P.3d at 21; *Brown v. Greiner,* 409 F.3d 523, 533 (2nd Cir.2005); *State v. Rivera,* 106 Hawai'i 146, 102 P.3d 1044, 1055–56, 1059–62 (2004) (citing *People v. Rivera,* 5 N.Y.3d 61, 800 N.Y.S.2d 51, 833 N.E.2d 194, 200 n. 8 (2005); *State v. Satterwhite,* 2005 WL 1356445 at *6 (Ohio App. 10 Dist. June 9, 2005); *State v. Lett,* 161 Ohio App.3d 274, 829 N.E.2d 1281, 1289–92 (8 Dist.2005) (en banc) ). *See also People v. Black,* 35 Cal.4th 1238, 29 Cal.Rptr.3d 740, 113 P.3d 534, 548–50 (2005); *State v. Senske,* 692 N.W.2d 743, 747–48 (Minn.App. 2005); *State v. Kinney,* 125 Wash.App. 778, 106 P.3d 274, 275–77 (1 Div.2005).

**13.** *Apprendi,* 530 U.S. at 470, 120 S.Ct. at 2352; *Blakely,* 542 U.S. at 298, 124 S.Ct. at 2534.

focused on the division of authority between a judge and a jury:

> [T]he Sixth Amendment by its terms is not a limitation on judicial power, but a reservation of jury power. It limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury. Indeterminate sentencing does not do so. It increases judicial discretion, to be sure, but not at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the penalty. Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal right to a lesser sentence—and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned.[14]

The facts that a jury finds are not essential to the lawful imposition of consecutive sentencing. When a judge is sentencing a defendant on more than one conviction in a single judgment, whether the multiple convictions arise from guilty verdicts from a jury trial or from more than one guilty or no contest plea, the jury retains its power to find the facts underlying each count and underlying the "statutory maximum" that a judge has authority to impose on any single count. In the usual case, AS 12.55.127(b) permits concurrent sentencing, but in some circumstances, on the basis of the verdicts alone, AS 12.55.127(c) mandates minimum consecutive sentencing depending on the crime.

Furthermore, developing case law supports the conclusion that a sentencing judge's traditional classification of facts about a defendant's background and conduct used to impose a term authorized by a verdict, plea, or express concession are not covered by the *Blakely* right to jury trial.[15]

Again, the *Neal–Mutschler* rule is a judicially created common-law rule that guides a sentencing judge's analysis when imposing consecutive sentencing. The rule directs a judge to explain the rationale for imposing a term to serve greater than the maximum term for the single most serious offense. This explanation promotes the legislature's mandate to eliminate unjustified disparity and attain reasonable uniformity in sentencing because the explanation enables appellate sentencing review.[16] The rule does not increase the potential sentence a defendant may receive beyond the statutory range of potential sentences already specified by the legislature. Instead, the rule announces that trial judges operating within the range of potential penalties specified by the legislature should exercise their discretion to impose consecutive sentencing beyond the maximum penalty for the most serious offense only after a careful examination of the sentencing criteria.

Considering all the above, we conclude that, when a sentencing judge applying the *Neal–Mutschler* rule assesses whether a composite term to serve exceeding the maximum term for the defendant's single most serious crime is necessary to protect the public, the judge is not required to submit this issue to a jury.

*Does a judge applying the Neal–Mutschler rule have the authority to protect the public from potential property crimes?*

■ Vandergriff argues that Judge Thompson improperly applied the *Neal–Mutschler* rule. Vandergriff claims, without citation to authority, that "when a court speaks of protecting the public, it generally means protecting the public against violent crimes." Vandergriff argues that a sentence in excess of the maximum term for the most serious offense is not justified because Vandergriff's present offenses and past offenses were property offenses.

---

14. *Blakely,* 542 U.S. at 308–09, 124 S.Ct. at 2540.

15. *See Edmonds,* 118 P.3d at 21; *Simon v. State,* 121 P.3d 815, 820 (Alaska App.2005); *State v. Hughes,* 154 Wash.2d 118, 110 P.3d 192, 202 (2005); *Black,* 29 Cal.Rptr.3d 740, 113 P.3d at 543; *State v. Martinez,* 210 Ariz. 578, 115 P.3d 618, 623 (2005).

16. AS 12.55.005.

This is not the rule illustrated by our case law. For example, in *O'Brannon v. State*,[17] we affirmed the superior court's sentence of 1500 days' imprisonment with 1125 days suspended on eighteen counts of criminal contempt, which had a maximum penalty of 180 days imprisonment.[18] And in *Montes v. State*,[19] we affirmed the superior court's imposition of a composite 7–year term, a term that exceeded the 5–year maximum term for each of the five counts of second-degree theft for which Montes had been convicted. We concluded that the superior court imposed the term to protect the public.[20]

We conclude that Judge Thompson properly applied the *Neal–Mutschler* rule to impose a composite term that exceeds the maximum 5–year term for Vandergriff's individual crimes.

*Was Vandergriff denied his right of confrontation?*

Without citation to any authority, Vandergriff asserts that his right of confrontation was violated because Judge Thompson considered non-testimonial statements of community members.

But a sentencing court may consider statements alleging other misconduct by a defendant unless the defendant takes the stand, enters a testimonial denial of the misconduct, and submits to cross-examination.[21] Vandergriff did not do this.

*Is Vandergriff's sentence excessive?*

Finally, Vandergriff argues that his sentence is excessive especially considering the fact that most of his prior convictions were over twenty years old. Vandergriff also points out that he did not have a history of substance abuse and that he was convicted of property crimes. But after Judge Thompson considered Vandergriff's personal history and his present offenses, Judge Thompson

reviewed the sentencing criteria and concluded that a 6–year term to serve was warranted. From our review of the record, we conclude that Vandergriff's sentence is not clearly mistaken.[22]

*Conclusion*

Vandergriff's sentence is AFFIRMED.

MANNHEIMER, Judge, concurring.

I write separately to explain my analysis of the *Blakely* issue presented in this appeal.

In *Neal v. State*, 628 P.2d 19 (Alaska 1981), the Alaska Supreme Court announced a rule that governs consecutive sentencing in this state. The supreme court held that when a judge sentences a defendant for two or more crimes, and when the law authorizes the judge to impose consecutive sentences for these crimes, the judge should not employ this power of consecutive sentencing to impose a composite sentence that exceeds the maximum term of imprisonment for the defendant's most serious offense unless the judge makes "a formal finding that confinement for [this composite] term is necessary to protect the public". *Neal*, 628 P.2d at 21.

Vandergriff's appeal presents the question of whether the Sixth Amendment right to jury trial, as construed by the United States Supreme Court in *Apprendi v. New Jersey*, *Blakely v. Washington*, and *United States v. Booker*, applies to the sentencing finding required by *Neal*. I conclude that the answer to this question is "no".

It is difficult to write a single paragraph that encapsulates the Supreme Court's holdings in *Apprendi*, *Blakely*, and *Booker* without any ambiguity. However, the basic principle behind *Apprendi*, *Blakely*, and *Booker* is to preserve the right of jury trial in the face of legislative attempts to divide offenses into "elements" (facts to be proved at trial) and "sentencing factors" (facts to be proved

---

**17.** 812 P.2d 222 (Alaska App.1991).

**18.** *Id.* at 232.

**19.** 669 P.2d 961 (Alaska App.1983).

**20.** *Id.* at 967–68.

**21.** *Evans v. State*, 23 P.3d 650, 652 (Alaska App. 2001); *Hamilton v. State*, 771 P.2d 1358, 1362–63 (Alaska App.1989).

**22.** *See McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974) (an appellate court is to affirm a sentencing court's decision unless the sentence is clearly mistaken).

at the sentencing hearing). *Apprendi, Blakely,* and *Booker* hold that when the maximum punishment to which a defendant can be subjected varies according to the defendant's degree of offense, a defendant has the right to demand that a jury decide their degree of offense, and the right to demand that the factors which distinguish one degree of offense from another be proved beyond a reasonable doubt.

The *Neal* rule does not involve this legal principle. Rather, the *Neal* rule governs a sentencing judge's exercise of discretion when the judge decides whether to make a defendant's sentences for two or more crimes consecutive or concurrent. This kind of decision has never been made by juries; it has always been entrusted to judges. The decision to impose consecutive versus concurrent sentences is made only after the defendant's guilt and the corresponding maximum punishment for each offense have been determined by trial or by plea. While the judge's decision may involve an assessment of the facts of the defendant's particular offenses, the judge's decision ultimately rests on the answers to broader questions: the underlying causes of the defendant's criminal behavior, the defendant's likelihood of recidivism, and the defendant's amenability to rehabilitative efforts. These questions have traditionally been answered by a sentencing judge rather than a jury.

Accordingly, I conclude that the Sixth Amendment right to jury trial (and to proof beyond a reasonable doubt) does not apply to the *Neal* sentencing finding.

*The argument that can be made in favor of Vandergriff's position*

Although I ultimately reject Vandergriff's Sixth Amendment argument, I acknowledge that his contention is reasonably debatable. The Alaska Supreme Court's decision in *Neal* declares that, absent an express finding that the protection of the public demands a longer sentence, the maximum sentence for the defendant's single most serious crime

represents a ceiling on a sentencing judge's statutory authority to impose consecutive sentences. At first blush, this looks like the kind of sentencing scheme that was at issue in *Blakely v. Washington.*[1]

The problem presented in *Blakely* was that Washington law provided a technical "maximum" sentence for Blakely's crime, but Blakely's sentencing judge had no authority to impose that maximum sentence unless the judge found certain aggravating factors. The United States Supreme Court held that Blakely's true maximum sentence (for Sixth Amendment purposes) was the lesser sentence that represented the ceiling on the judge's sentencing authority in the absence of aggravating factors.

Vandergriff and other similarly situated defendants might plausibly argue that *Neal* establishes a similar sentencing scheme governing consecutive sentencing in Alaska. As we recently noted in *Edmonds v. State,* a sentencing judge in Alaska has the authority (sometimes the duty) to impose consecutive sentences for a defendant's crimes.[2] But *Neal* states that the maximum sentence for the defendant's single most serious crime represents a limit on the judge's power to impose consecutive sentences, a ceiling that the judge can not exceed unless the judge makes a particular finding (that a greater sentence is required to protect the public).

It is true, as Judge Stewart's majority opinion points out, that the *Neal* rule is a common-law rule—that is, a court-made rule—rather than a legislative enactment. But this fact does not necessarily resolve Vandergriff's *Blakely* claim.

In *United States v. Booker,*[3] the Supreme Court confronted the question of whether the *Blakely* right to jury trial applied to the findings of fact that determined a defendant's sentencing range under the federal sentencing guidelines. These guidelines were promulgated by the independent Federal Sentencing Commission, a non-legislative agency that Congress placed in the judicial branch of

---

**1.** 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

**2.** 118 P.3d 17, 21 (Alaska App.2005).

**3.** 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

government.[4] In *Booker*, the government argued that *Blakely* did not apply to the sentencing guidelines "because the Guidelines were promulgated by a commission rather than the Legislature".[5] The Supreme Court flatly rejected this argument:

> In our judgment[,] the fact that the Guidelines were promulgated by the Sentencing Commission, rather than Congress, lacks constitutional significance. In order to impose [increased] sentences under the Guidelines, ... judges [are] required to find [some] additional fact, such as drug quantity [or the infliction of] serious bodily injury.... [D]efendants ... face significantly higher sentences ... because a judge [finds] true by a preponderance of the evidence a fact that was never submitted to the jury. [The constitutional flaw in this procedure is the same, regardless] of whether Congress or a Sentencing Commission concluded that a particular fact must be proved in order to sentence a defendant within a particular range....

*Booker*, 543 U.S. at ——, 125 S.Ct. at 752.

The Supreme Court acknowledged that, in *Apprendi v. New Jersey*,[6] it had declared that the right to jury trial applied to findings of fact that increased "the prescribed *statutory* maximum [sentence]".[7] But the Court explained that it had used the word "statutory" because the *Apprendi* case had dealt with a sentencing statute. The Court cautioned that, for Sixth Amendment purposes, the form in which a sentencing rule is promulgated is not determinative of a defendant's right to jury trial on the underlying facts which trigger that sentencing rule:

> More important than the language used in our holding in *Apprendi* are the principles we sought to vindicate.... The Framers of the Constitution understood the threat of "judicial despotism" that could arise from "arbitrary punishments upon

arbitrary convictions" without the benefit of a jury in criminal cases.... Regardless of whether the legal basis of the [sentencing] accusation is in a statute or in guidelines promulgated by an independent commission, the principles behind the jury trial right are equally applicable.

*Booker*, 543 U.S. at ——, 125 S.Ct. at 753.

This insistence on the primacy of substance over form echoes the Supreme Court's holding in *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), where the Court declared, "If a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact—no matter how the State labels it— must be found by a jury beyond a reasonable doubt."[8]

Based on what the Supreme Court said in *Booker* and *Ring*, we can not reject Vandergriff's *Blakely* claim by merely noting that the *Neal* rule was made by our supreme court rather than by our legislature.

Instead, we must decide whether the sentencing finding required by *Neal* is the same sort of finding that was at issue in *Apprendi*, *Blakely*, and *Booker*. To make that decision, it is necessary to examine the principle underlying the decisions in *Apprendi*, *Blakely*, and *Booker*, and then assess whether that principle is violated when a sentencing court makes the finding required by *Neal*.

*The principle underlying Apprendi, Blakely, and Booker: preserving the right to jury trial in the face of modern "determinate sentencing" laws*

In *Apprendi v. New Jersey*, the Supreme Court assessed the constitutionality of a provision of state law (New Jersey's "hate crime" law) which increased the maximum sentence for various offenses. The defen-

---

**4.** *Booker*, 543 U.S. at ——, 125 S.Ct. at 754–55; see also *Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989) (upholding the constitutionality of this Congressional delegation of sentencing authority).

**5.** *Booker*, 543 U.S. at ——, 125 S.Ct. at 752.

**6.** 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

**7.** *Booker*, 543 U.S. at ——, 125 S.Ct. at 752 (quoting *Apprendi*, 530 U.S. at 490, 120 S.Ct. at 2363, but adding emphasis to the word "statutory").

**8.** *Ring*, 536 U.S. at 602, 122 S.Ct. at 2439.

dant in *Apprendi* was convicted of possessing a firearm for an unlawful purpose. The normal maximum sentence for this crime was 10 years' imprisonment, but the hate crime law authorized a sentencing judge to impose an "extended term" of 20 years if the judge found (by a preponderance of the evidence) that the defendant had acted for the purpose of intimidating other people based on their race, religion, ethnic background, sexual orientation, etc.[9]

The New Jersey legislature and courts did not view the "hate crime" law as defining a separate substantive offense; rather, the law was seen as a sentencing provision that increased the sentencing range for a whole class of offenses, based on proof of a particular sentencing factor (the defendant's motive for committing the underlying crime).[10] Nevertheless, the Supreme Court declared that this type of sentencing provision implicated a defendant's right to notice, to trial by jury, and to proof beyond a reasonable doubt.[11] The Court explained:

> Any possible distinction between an "element" of a felony offense and a "sentencing factor" was unknown to the practice of criminal indictment, trial by jury, and judgment by court as it existed during the years surrounding our Nation's founding. As a general rule, criminal proceedings were submitted to a jury after being initiated by an indictment containing "all the facts and circumstances which constitute the offence, ... stated with such certainty and precision, that the defendant ... may [ ... ] determine the species of offence they constitute [and] prepare his defence accordingly ... and *that there may be no doubt as to the judgment which should be given*, if the defendant be convicted."

*Apprendi*, 530 U.S. at 478, 120 S.Ct. at 2356 (quoting J. Archbold, *Pleading and Evidence in Criminal Cases* (15th ed. 1862), p. 44) (emphasis in the *Apprendi* opinion).

The Supreme Court italicized this last portion of the quote from Archbold to emphasize that, in the eighteenth and nineteenth centuries, there was an "invariable linkage of punishment with crime". In the words of Blackstone (quoted in *Apprendi* ), a sentencing court was obliged to "pronounce that judgment, which the law hath annexed to the crime".[12]

The Court explained that it was compelled to take action because, in recent years, new forms of sentencing statutes had begun to erode "[t]he historic link between verdict and judgment".[13] The problem, as explained by the Court, was that these statutes introduced "the novelty of a ... scheme that removes the jury from the determination of a fact that, if found, exposes the criminal defendant to a penalty exceeding the maximum he [might] receive if punished according to the facts reflected in the jury verdict alone."[14]

> We do not suggest that trial practices cannot change [over the] centuries.... But [criminal] practice must ... adhere to the basic principles undergirding the requirements of trying to a jury *all facts necessary to constitute a statutory offense,* and proving those facts beyond a reasonable doubt.

*Apprendi*, 530 U.S. at 483–84, 120 S.Ct. at 2359 (emphasis added).

This italicized language is, I believe, key to understanding the *Apprendi* decision. The Supreme Court viewed the New Jersey hate crime law as, in essence, creating a new group of statutory offenses—new, aggravated versions of the various underlying offenses to which the hate crime law applied. The Court declared that, whatever might be said in favor of "the constitutionally novel and elusive distinction between 'elements' [of an offense] and 'sentencing factors', ... the relevant inquiry is one not of form, but of effect—does the required finding [*i.e.*, the defendant's motive for committing the underlying offense] expose the defendant to a

9. *Apprendi*, 530 U.S. at 469–470, 120 S.Ct. at 2351.

10. *Id.*, 530 U.S. at 492, 120 S.Ct. at 2363–64.

11. *Id.*, 530 U.S. at 476–77, 120 S.Ct. at 2355–56.

12. *Id.*, 530 U.S. at 478–79, 120 S.Ct. at 2356.

13. *Id.*, 530 U.S. at 482, 120 S.Ct. at 2359.

14. *Id.*, 530 U.S. at 482–83, 120 S.Ct. at 2359.

greater punishment than that authorized by the jury's ... verdict [finding the defendant guilty of that underlying offense]?"[15]

Having reached the conclusion that New Jersey's hate crime law actually created a new, aggravated form of the underlying crime of possession of a firearm for an unlawful purpose, the Supreme Court then (naturally) declared that it was unconstitutional for the government of New Jersey to segregate one element of this offense, call it a "sentencing factor", and then have that element tried to the sentencing judge under a preponderance of the evidence standard.[16]

In *Blakely v. Washington*,[17] the Supreme Court extended the rationale of *Apprendi* to the context of determinate sentencing.

The defendant in *Blakely* pleaded guilty to second-degree kidnapping, a crime that carried a maximum sentence of 10 years' imprisonment.[18] However, within this 10-year sentencing range, a judge's sentencing discretion was confined by a series of criteria that either called for particular sentencing ranges or that augmented or reduced the otherwise prescribed sentencing ranges. Thus, for instance, the defendant in *Blakely* was subject to a standard sentencing range of slightly more than 4 years (49 to 53 months) because, among class B felonies, second-degree kidnapping had a "seriousness level" of V, and because Blakely had an "offender score" of 2, and because Blakely's use of a firearm during the commission of the kidnapping subjected him to a 36-month enhancement of the otherwise prescribed range.[19]

Despite this detailed sentencing calculus, Washington law authorized sentencing judges to impose a sentence above the prescribed sentencing range if the judge found "substantial and compelling reasons justifying an exceptional sentence".[20] In Blakely's case, the sentencing judge exceeded the pre-

scribed range by more than 3 years (Blakely received 7½ years to serve) because the judge found that Blakely had acted with deliberate cruelty.[21]

The Supreme Court held that, under Washington's sentencing laws, the finding of deliberate cruelty was legally necessary to support the punishment that Blakely received[22]—and that, for this reason, Blakely was entitled to have a jury decide whether the state had proved this fact beyond a reasonable doubt:

> [T]he "statutory maximum" [sentence] for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* ... In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, ... the judge exceeds his proper authority.

*Blakely,* 542 U.S. at 303–04, 124 S.Ct. at 2537 (emphasis in the original).

Writing for the majority in *Blakely*, Justice Scalia explained that the Court's decision was based on "the need to give intelligible content to the right of jury trial".[23]

> [This] right is no mere procedural formality, but a fundamental reservation of power in our constitutional structure.... [J]ury trial is meant to ensure [the people's ultimate] control in the judiciary.... *Apprendi* carries out this design by ensuring that the judge's authority to sentence derives wholly from the jury's verdict. Without that restriction, the jury would not exercise the control that the Framers intended.

*Blakely,* 542 U.S. at 305–06, 124 S.Ct. at 2539.

---

15. *Id.,* 530 U.S. at 494, 120 S.Ct. at 2365.

16. *Id.,* 530 U.S. at 494–97, 120 S.Ct. at 2365–66.

17. 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

18. *Blakely,* 542 U.S. at 299, 124 S.Ct. at 2534–35.

19. *Id.,* 542 U.S. at 299, 124 S.Ct. at 2535.

20. *Id.*

21. *Id.*

22. *Id.,* 542 U.S. at 303–05, 124 S.Ct. at 2537–38.

23. *Id.,* 542 U.S. at 305, 124 S.Ct. at 2538.

Justice Scalia then emphasized that the problem was not judicial fact-finding *per se,* but rather legislative encroachment on the right to jury trial.

> [T]he Sixth Amendment ... is not a limitation on judicial power, but a reservation of jury power. It limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury.

*Blakely,* 542 U.S. at 308, 124 S.Ct. at 2540.

Thus, under a system of *indeterminate* sentencing—*i.e.,* a sentencing scheme in which the judge has the discretion to impose any term of imprisonment within a specified range of sentences—a sentencing judge does not violate the Sixth Amendment when the judge engages in fact-finding when choosing a sentence within the specified range:

> Indeterminate sentencing ... increases judicial discretion, ... but not at the expense of the jury's traditional function of finding the facts essential to the lawful imposition of the penalty.... [I]ndeterminate [sentencing] schemes involve judicial factfinding, in that a judge ... may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But [these] facts do not pertain to whether the defendant has a legal *right* to a lesser sentence—and that makes all the difference [on the issue of] judicial impingement upon the traditional role of the jury.... In a system that says the judge may punish burglary with [a sentence of] 10 to 40 years, every burglar knows he is risking 40 years in jail. [But in] a system that punishes burglary with a 10–year sentence, with another 30 added for use of a gun, the burglar who enters a home unarmed is *entitled* to no more than a 10–year sentence—and by reason of the Sixth Amendment[,] the facts [that authorize any higher sentence] must be found by a jury.

*Blakely,* 542 U.S. at 309, 124 S.Ct. at 2540 (emphasis in the original).

The Supreme Court's most recent decision in this area, *United States v. Booker,*[24] contains an even more explicit explanation of the rationale underlying *Apprendi* and *Blakely.* Justice Stevens, writing for the majority, em-phasized that the key constitutional problem was the erosion of the jury's traditional role in determining a criminal defendant's level of guilt, as more and more states (and the federal government) adopted determinate sentencing schemes—sentencing schemes that gave judges the power to resolve the factual disputes that would determine the upper limit of the defendant's punishment:

> It is quite true that[, under indeterminate sentencing schemes,] judges commonly determined facts justifying [their] choice of a heavier sentence.... [But in] 1986, [we] first recognized a new trend in the legislative regulation of sentencing[: sentencing laws under which] facts selected by legislatures ... not only authorized, or even mandated, heavier sentences than would otherwise have been imposed, but increased the range of sentences possible for the underlying crime....
>
> The effect of the increasing emphasis on facts that enhanced [the permitted] sentencing ranges ... was to increase the judge's power and diminish that of the jury. It became the judge, not the jury, that determined the upper limits of sentencing, and the facts [that] determined [the sentencing range] were not required to be raised before trial or proved by more than a preponderance [of the evidence].
>
> As the [sentencing] enhancements became greater, the jury's finding of the underlying crime became less significant. And the [sentence] enhancements became very serious indeed [—in some instances, dwarfing the initially prescribed sentence].

*Booker,* 543 U.S. ——, 125 S.Ct. at 751.

Justice Stevens explained that, given this development in sentencing law, "the Court was faced with the issue of preserving the ancient guarantee [of jury trial] under a new set of circumstances":

> The new sentencing practice forced the Court to address the question [of] how the right of jury trial could be preserved [so that it would continue to guarantee], in a meaningful way[,] ... that the jury would still stand between the individual and the power of the government under the new

---

**24.** 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

sentencing regime. [I]t is the new circumstances ... that have led us to the answer ... developed in *Apprendi* and subsequent cases[,] culminating with this one. It is an answer not motivated by Sixth Amendment formalism, but by the need to preserve Sixth Amendment substance.

*Booker*, 543 U.S. ——, 125 S.Ct. at 752.

With this explanation of *Apprendi*, *Blakely*, and *Booker* as my guide, I now turn to the question at hand: Under the Sixth Amendment, does a defendant have the right to insist that a jury decide the sentencing question posed by *Neal* (whether a term of imprisonment exceeding the maximum for the defendant's single most serious offense is needed to protect the public)?

*Why I conclude that the right to jury trial announced in Apprendi, Blakely, and Booker does not apply to a Neal finding*

The Supreme Court's decisions in *Apprendi*, *Blakely*, and *Booker* all ultimately deal with the same issue: the limitation that the Sixth Amendment places on the government's power to define criminal offenses. To preserve the right to jury trial guaranteed by the Sixth Amendment, the Supreme Court has ruled that governments can not define criminal offenses in a manner that allows the prosecutor to present a stripped-down case to the jury and then, following the defendant's conviction, allows the sentencing judge to decide other factual issues which (if proved) will lift the sentencing ceiling—effectively convicting the defendant of an aggravated degree of the underlying offense.

But as the Supreme Court has repeatedly emphasized, this trilogy of cases does not affect the legality of judicial fact-finding in the context of indeterminate sentencing—that is, in a sentencing scheme where the penalty for a crime is a range of imprisonment, and the judge's task is to decide how to exercise the sentencing discretion afforded by this range of imprisonment. In this con-

text, as Justice Scalia explained in *Blakely*, the facts found by the sentencing judge "do not pertain to whether the defendant has a legal *right* to a lesser sentence—and that makes all the difference [as to whether the judge's fact-finding] impinge[s] upon the traditional role of the jury".[25]

Under Alaska law, the fact that a defendant has been found guilty of two or more crimes automatically subjects the defendant to the possibility of consecutive sentences. No further fact-finding is necessary to invest the sentencing judge with the authority· to impose consecutive terms of imprisonment.[26] (Indeed, both this Court and our supreme court have construed Alaska's sentencing statutes as creating a slight preference for consecutive sentencing, a preference which the sentencing judge has the authority to reject.)[27]

Thus, when an Alaska judge decides whether, or to what extent, a defendant's sentences should be imposed consecutively, the judge is performing a task analogous to the task a judge would face when sentencing a defendant for a single offense under an indeterminate sentencing scheme. Except in those instances where Alaska law expressly *requires* consecutive sentencing, the judge's sentencing discretion does not hinge on any particular fact relating to the defendant's conduct, mental state, or criminal history, or to any other circumstance surrounding the defendant's crimes. When the sentencing judge engages in fact-finding on any of these issues, this fact-finding is not done to establish the judge's legal authority to impose the selected sentence. Rather, this fact-finding is done to explain—to the defendant, to the public, and ultimately to a reviewing court— why the judge exercised their sentencing discretion in a particular manner.

Earlier in this concurrence, I described the argument that could be made in favor of Vandergriff's position in this appeal. The argument is this: An Alaska sentencing judge's discretion to impose consecutive sen-

---

**25.** *Blakely*, 542 U.S. at 309, 124 S.Ct. at 2540.

**26.** *See Edmonds v. State*, 118 P.3d 17, 21 (Alaska App.2005).

**27.** *See State v. Hodari*, 996 P.2d 1230, 1233 (Alaska 2000); *Contreras v. State*, 767 P.2d 1169, 1174 (Alaska App.1989); *Jones v. State*, 744 P.2d 410, 411 (Alaska App.1987); *State v. Andrews*, 707 P.2d 900, 909 (Alaska App.1985), *affirmed* 723 P.2d 85 (Alaska 1986).

tences is not unbounded. In *Neal,* our supreme court established a ceiling (albeit a flexible ceiling) that applies to consecutive sentencing decisions, and the court defined the question that must be addressed before this ceiling is exceeded: whether the protection of the public requires a composite sentence beyond the maximum term for the defendant's single most serious offense. Because this question must be answered in the affirmative before a judge may properly impose consecutive sentences that exceed this ceiling, a defendant has the right to demand that a jury decide this question, and the right to demand that the government prove its position (*i.e.,* the necessity of such a lengthy sentence) beyond a reasonable doubt.

I reject this argument for three reasons.

First, the rule announced in *Neal* does not implicate the constitutional concern addressed in *Apprendi, Blakely,* and *Booker.* As explained above, these three decisions are aimed at preventing the government from subverting the right to jury trial by artificially dividing crimes into "elements" (facts that must be proved to a jury beyond a reasonable doubt) and "sentencing factors" (facts which increase the defendant's maximum punishment and which can be proved to a judge under some lesser standard). The *Neal* rule has nothing to do with reshaping the role of the jury in the criminal justice process. Rather, *Neal* is the supreme court's attempt to regulate the expansive consecutive sentencing power that the legislature has given to judges. *Neal* requires sentencing judges to think, and to explain, before they utilize the full extent of their consecutive sentencing power.

Second, the finding required by *Neal* is not the same type of finding that was at issue in *Apprendi, Blakely,* and *Booker.* To a large degree, this conclusion follows from what I said in the previous paragraph.

The constitutional problem in *Apprendi, Blakely,* and *Booker* was the attempt by various governments to segregate certain aspects of a crime—facts that would traditionally be viewed as elements of the crime (facts relating to the defendant's conduct, mental

state, or criminal history, or to other circumstances surrounding the crime)—and assign the decision of these facts to the sentencing judge by declaring these facts to be "sentencing factors".

In contrast, the finding required by *Neal* does not turn on any factual aspect of the defendant's present offenses. Although a sentencing judge who complies with the *Neal* rule may mention or even rely on the facts of the defendant's present offenses, the ultimate question posed by *Neal* is not one of historical fact. Rather, *Neal* requires sentencing judges to explain their conclusions regarding the proper length of a defendant's composite sentence. Under Alaska law, this sentencing conclusion must be based on a weighing of the defendant's conduct and background against, or in light of, the various sentencing goals first announced in *State v. Chaney,* 477 P.2d 441, 444 (Alaska 1970), and now codified in AS 12.55.005.[28]

Rather than being a finding of historical fact, the finding required by *Neal* (that a lengthy sentence is required to protect the public) is partly a weighing of imponderables and partly a prediction of the defendant's future behavior, based on the judge's assessment of the underlying causes of the defendant's criminal behavior, the defendant's likelihood of recidivism, and the defendant's amenability to rehabilitative efforts. In other words, this finding does not look like any of the findings that are traditionally entrusted to the jury under our system of justice (save in those few states which give sentencing authority to juries).

(*Accord: People v. Black,* 35 Cal.4th 1238, 29 Cal.Rptr.3d 740, 756–58, 113 P.3d 534, 548–550 (2005); *State v. Rivera,* 106 Hawai'i 146, 102 P.3d 1044, 1054–58, 1059–1062 (2004); *People v. Rivera,* 5 N.Y.3d 61, 800 N.Y.S.2d 51, 56–57, 833 N.E.2d 194, 199–200 (2005); *State v. Lett,* 161 Ohio App.3d 274, 829 N.E.2d 1281, 1290–92 (2005) (*en banc*); *State v. Hughes,* 154 Wash.2d 118, 110 P.3d 192, 202 (2005).)

Third, and finally, it makes no sense to require the government to prove the necessity of a particular sentence beyond a rea-

**28.** *See Asitonia v. State,* 508 P.2d 1023, 1026 (Alaska 1973).

sonable doubt. Alaska law recognizes that sentencing is not an exact science. As our supreme court has said, appellate sentence review in this state "is founded on two concepts: first, that reasonable judges, confronted with identical facts, can and will differ on what constitutes an appropriate sentence; second, that society is willing to accept these sentencing discrepancies, so long as a judge's sentencing decision falls within a permissible range of reasonable sentences."[29] Because a sentencing decision involves the weighing of imponderables and a prediction of future behavior, it is self-defeating and fruitless to ask the government to prove that, beyond any reasonable doubt, a particular sentence is necessary to protect the public.

For these reasons, I conclude that the *Neal* rule does not implicate the Sixth Amendment concerns expressed in *Apprendi, Blakely,* and *Booker.* Accordingly, I concur with my colleagues that a defendant has no right to have a jury decide the sentencing question posed by *Neal.*

---

**29.** *State v. Hodari,* 996 P.2d 1230, 1232 (Alaska 2000), quoting this Court's decision in *Erickson v. State,* 950 P.2d 580, 586 (Alaska App.1997).