SUPREME COURT OF ARIZONA
En Banc

| | | |
|---|---|---|
| STATE OF ARIZONA, | ) | Arizona Supreme Court |
| | ) | No. CR-04-0435-PR |
| Appellee, | ) | |
| | ) | Court of Appeals |
| v. | ) | Division One |
| | ) | No. 1 CA-CR 03-0728 |
| PABLO ARCINIEGA MARTINEZ, | ) | |
| | ) | Maricopa County |
| Appellant. | ) | Superior Court |
| | ) | No. CR 2000-014823(B) |
| | ) | |
| _____ | ) | **O P I N I O N** |

Appeal from the Superior Court of Maricopa County
No. CR 2000-014823(B)
The Honorable Eileen S. Willett, Judge

**SENTENCES AFFIRMED**
_____

Opinion of the Court of Appeals, Division One
209 Ariz. 280, 100 P.3d 30 (App. 2004)

**AFFIRMED IN PART**

_____

TERRY GODDARD, ATTORNEY GENERAL                          Phoenix
     By   Randall M. Howe, Chief Counsel
          Criminal Appeals Section
          Michael T. O'Toole, Assistant Attorney General
          Criminal Appeals Section
Attorneys for the State of Arizona

JAMES J. HAAS, MARICOPA COUNTY PUBLIC DEFENDER           Phoenix
     By   Stephen Whelihan, Deputy Public Defender
Attorneys for Pablo Arciniega Martinez

OFFICE OF COURT APPOINTED COUNSEL                        Phoenix
     By   Mark Kennedy
          Treasure VanDreumel
Attorneys for Amicus Curiae
Maricopa County Office of Contract Counsel

_____

**M c G R E G O R,** Chief Justice

¶1        We granted review in this case to resolve a single issue:  Does the Sixth Amendment guarantee of a right to jury trial, as applied to Arizona's general felony sentencing scheme, require that a sentencing judge consider only those aggravating factors found by a jury beyond a reasonable doubt in determining whether to impose an aggravated sentence, or may the judge find and consider additional aggravating factors once a single aggravating factor has been found by the jury, is inherent in the jury's verdict, or has been admitted by the defendant?  We exercise jurisdiction pursuant to Article 6, Section 5.3 of the Arizona Constitution and Rule 31.19 of the Arizona Rules of Criminal Procedure.

**I.**

¶2        A jury convicted Pablo Arciniega Martinez of murder in the first degree, burglary, and theft of a means of transportation, all in connection with the brutal killing of Martinez' 69-year-old landlord.  The State sought the death penalty for the murder conviction, alleging two aggravators: Martinez committed the murder for pecuniary gain, Ariz. Rev. Stat. (A.R.S.) § 13-703.F.5 (Supp. 2000), and committed the murder in an especially heinous, cruel or depraved manner, *id.* § 13-703.F.6.  The jury found neither of these aggravators, and

2

the trial judge imposed a sentence of natural life for the murder conviction.

¶3     In determining the sentences for the burglary and theft convictions, the trial judge, acting pursuant to A.R.S. § 13-702.C (Supp. 2000), found by a preponderance of the evidence the following aggravating factors: (1) the presence of an accomplice; (2) the use of a knife as a weapon; (3) the severe injuries and death of the victim; (4) the emotional and physical pain suffered by the victim; (5) the emotional and financial harm to the victim's family; (6) the brutal nature of the crime; (7) pecuniary gain; and (8) the victim's age.  The trial judge then imposed consecutive aggravated sentences of seven years each for the burglary and theft convictions.

¶4     Martinez timely appealed both his convictions and the imposition of aggravated sentences.[1]  In a supplemental brief to the court of appeals, Martinez argued for the first time that his aggravated sentences violate the United States Supreme Court's holding in *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004), because the trial court improperly considered aggravating factors not found by the jury.  Because Martinez failed to raise this issue at trial, the court of appeals

---

[1]     The court of appeals affirmed Martinez' convictions in a separate, unpublished memorandum decision. *State v. Martinez*, 1 CA-CR 03-0728 (Ariz. App. Nov. 4, 2004) (mem. decision). Martinez did not seek review of that decision.

concluded that he had waived the claim.[2]  Nevertheless, the court

reviewed the sentencing procedure for fundamental error.  *State

v. Martinez*, 209 Ariz. 280, 283 ¶ 9, 100 P.3d 30, 33 (App.

2004).   Finding no fundamental error, the court affirmed

Martinez' sentences, holding that they comport with the Sixth

Amendment as interpreted in *Blakely*.   *Id.* at 281-82 ¶ 1, 100

P.3d at 31-32.

¶5      The court of appeals held that if a jury finds, or a

defendant admits, at least one aggravating factor, the defendant

becomes eligible to receive an aggravated sentence under A.R.S.

§ 13-702, and the trial judge may consider additional facts not

found by the jury in determining the actual sentence to impose.

*Id.* at 284 ¶ 16, 100 P.3d at 34.  "[A] judge's imposition of an

aggravated sentence that falls within the range authorized by a

jury's verdict comports with *Blakely*; a jury need not find *every*

aggravator upon which a sentencing judge relies."  *Id.* at 281-82

¶ 1, 100 P.3d at 31-32.   In Martinez' case, the court concluded

that the finding that Martinez caused the death of the victim,

*see* A.R.S. § 13-702.C.1, was implicit in the jury's guilty

---

[2]    Defendants who fail to object to error at trial do not,
strictly speaking, "waive" their claims. Rather, defendants who
fail to object to an error below forfeit the right to obtain
appellate relief unless they prove that fundamental error
occurred. *See United States v. Olano*, 507 U.S. 725, 731 (1993);
*State v. Henderson*, ___ Ariz. ___, ___ ¶ 19, ___ P.3d ___, ___
(2005).

verdict on the first degree murder charge.  Once the jury found this aggravator, Martinez became eligible for an aggravated sentence, and the trial judge could then consider other aggravating factors in determining what sentence to impose within the statutory range for an aggravated sentence. *Martinez*, 209 Ariz. at 284 ¶ 16, 100 P.3d at 34.

¶6      Martinez petitioned for review, asking this Court to consider whether the aggravated sentences for burglary and theft comply with *Blakely*.[3]  We granted review because this is an issue of first impression and a question of statewide importance.  In addition, we granted review to resolve a split in authority within the court of appeals.  *Compare Martinez,* 209 Ariz. at 281-82 ¶ 1, 100 P.3d at 31-32, *and State v. Estrada*, 210 Ariz. 111, 112 ¶ 1, 108 P.3d 261, 262 (App. 2005), *with State v. Munninger*, 209 Ariz. 473, 480 ¶ 21, 104 P.3d 204, 211 (App. 2005), *and State v. Alire*, 209 Ariz. 517, 520-21 ¶ 14, 105 P.3d 163, 166-67 (App. 2005).

## II.

¶7      The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to a trial by jury.

---

[3]     The court of appeals also held that the trial court's consideration of aggravating factors not found by a jury in imposing a natural life sentence for the murder conviction did not violate *Blakely*.  *Martinez*, 209 Ariz. at 283 ¶ 12, 100 P.3d at 33; *see also State v. Fell (Sanders)*, ___ Ariz. ___, ___

5

Every criminal defendant has a right to "demand that a jury find him guilty of all the elements of the crime with which he is charged." *United States v. Booker*, 125 S. Ct. 738, 748 (2005) (Stevens, J., for the Court (constitutional majority)) (internal quotations omitted). This right to jury trial is not confined to the determination of guilt or innocence, but continues throughout the sentencing process. Thus, the Sixth Amendment guarantees to a defendant the right to demand that a jury find the existence of any specific fact that the law makes essential to his punishment. *Id.* at 749 (citing *Blakely*, 542 U.S. at ___, 124 S. Ct. at 2536). It is equally true, however, that "judges in this country have long exercised discretion . . . in imposing sentence *within statutory limits* in the individual case." *Apprendi v. New Jersey*, 530 U.S. 466, 481 (2000).

¶8      In a series of decisions interpreting modern criminal statutes and sentencing procedures in light of the Sixth Amendment, the United States Supreme Court has made clear that the Sixth Amendment jury trial requirement does not entirely remove from the purview of judges any consideration of aggravating factors. The Court has repeatedly distinguished between those facts that are legally essential to increase the punishment for a crime, and must therefore be found by a jury,

_____

¶ 19, ___ P.3d ___, ___ (2005). Martinez does not challenge that holding.

6

and those facts that a sentencing judge may, in his or her discretion, consider in sentencing a defendant within the range prescribed by statute and authorized by the jury's verdict. *See Jones v. United States*, 526 U.S. 227, 248 (1999); *Apprendi*, 530 U.S. at 494; *Harris v. United States*, 536 U.S. 545, 558 (2002); *Ring v. Arizona*, 536 U.S. 584, 604-05 (2002) (*Ring II*); *Blakely*, 542 U.S. at ___, 124 S. Ct. at 2537; *Booker*, 125 S. Ct. at 750.

**A.**

¶9     The Supreme Court first addressed the application of the Sixth Amendment jury trial requirement to the determination of aggravating factors in *Jones*.  There, the Court expressed concern that "diminishment of the jury's significance by removing control over facts determining a statutory sentencing range would resonate with the claims of earlier controversies, to raise a genuine Sixth Amendment issue not yet settled." *Jones*, 526 U.S. at 248.  The Court noted that prior cases suggested the following constitutional principle:  "[A]ny fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt."  *Id.* at 243 n.6. Prior case law did not suggest, however, that the Sixth Amendment requires that a jury find every fact related to a sentencing decision; rather, the case law indicated that removing from the jury the consideration of facts that increase

7

a sentencing range may run afoul of the Sixth Amendment. *Id.* at 248. *Jones* did not decide whether the Sixth Amendment requires juries to decide facts related to sentencing, however, because the Court ultimately interpreted the statute before it so as to avoid this constitutional issue. *Id.* at 251-52.

¶10    One year later, in *Apprendi*, the Court answered the question left open in *Jones*, by holding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Once again, the Court explained that "nothing in [the history of the right to jury trial] suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment *within the range* prescribed by statute." *Id.* at 481. Importantly, the *Apprendi* decision also noted that labeling a specific fact as an "element" or a "sentencing factor" is irrelevant to the Sixth Amendment analysis: "[T]he relevant inquiry is one not of form, but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" *Id.* at 494. If so, that fact is functionally an "element" for purposes of the Sixth Amendment jury right. A "sentencing factor," by contrast, is "a circumstance, which may

8

be either aggravating or mitigating in character, that supports a specific sentence *within the range* authorized by the jury's finding that the defendant is guilty of a particular offense." *Id.* at 494 n.19. Thus, *Apprendi* established that only those facts that expose a defendant to a penalty greater than the prescribed statutory maximum applicable by virtue of a guilty verdict are facts "legally essential" to the punishment.

¶11    The Court reinforced this conclusion two years later in *Harris*. In a plurality opinion authored by Justice Kennedy, the Court stated that while a jury must find those facts that establish the outer limits of a sentence, facts that limit a judge's sentencing discretion *within the prescribed statutory range*, such as those that compel imposition of a mandatory minimum sentence, may be found by judges rather than juries. *Harris*, 536 U.S. at 567. Thus, "[j]udicial factfinding in the course of selecting a sentence within the authorized range does not implicate the indictment, jury-trial, and reasonable-doubt components of the Fifth and Sixth Amendments." *Id.* at 558.

¶12    In *Blakely*, the Supreme Court applied these principles to a Washington state sentencing scheme and further clarified the import of the term "statutory maximum." "Our precedents make clear . . . that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted*

*by the defendant.*"  *Blakely*, 542 U.S. at ___, 124 S. Ct. at 2537.  In so holding, the Court continued to proclaim that the Sixth Amendment does not prohibit all judicial factfinding:

> Of course indeterminate [sentencing] schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion.  But the facts do not pertain to whether the defendant has a legal *right* to a lesser sentence— and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned.

*Id.* at ___, 124 S. Ct. at 2540.

¶13     Recently, the Supreme Court applied its Sixth Amendment jurisprudence to the Federal Sentencing Guidelines (the Guidelines).  *Booker*, 125 S. Ct. 738.  In *Booker*, the defendant was charged with possession with intent to distribute at least fifty grams of crack cocaine in violation of 21 U.S.C. § 841(a)(1) (1999).  125 S. Ct. at 746 (Stevens, J., for the Court (constitutional majority)).  The jury heard evidence that he possessed ninety-two and one-half grams and found him guilty.  That determination established a minimum sentence of 120 months in prison and a maximum sentence of life in prison.  Taking into account Booker's criminal history and the quantity of drugs found by the jury, the Guidelines directed the district court judge to select a sentence of not less than 210 nor more than 262 months in prison.  After holding a post-trial sentencing proceeding, the sentencing judge concluded by a preponderance of

10

the evidence that Booker had possessed an additional 566 grams of crack and that he was guilty of obstructing justice. Under the Guidelines, those findings directed the judge to impose a sentence between 360 months and life imprisonment; the judge imposed the minimum sentence permitted by the Guidelines. Thus, rather than the sentence of 262 months that the judge could have imposed solely on the basis of the facts proved to the jury beyond a reasonable doubt, Booker received a 360 month sentence, based in part upon the additional aggravating facts found by the judge by a preponderance of the evidence. *Id.*

¶14    The Court, applying *Apprendi* and its progeny, held that mandatory Guidelines would violate the Sixth Amendment. Once again, the Court emphasized that its decision would not limit the discretion of a judge to determine a defendant's sentence within a prescribed range permitted by a jury verdict:

> If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment. *We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range*. . . . For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant.

*Id.* at 750 (emphasis added).

¶15     In a separate part of the opinion, authored by Justice Breyer, the Court struck only those provisions of the Guidelines that made them mandatory, thus permitting the Guidelines to remain in place as advisory. *Id.* at 756-57 (Breyer, J., for the Court (remedial majority)). Justice Stevens dissented from the Breyer majority's remedial holding because he concluded that the Guidelines could continue to be applied constitutionally in the vast majority of cases. *Id.* at 771-72 (Stevens, J., dissenting in part). This is so, Justice Stevens asserted, because "the Guidelines as written possess the virtue of combining a mandatory determination of sentencing ranges and discretionary decisions within those ranges, . . . allow[ing] ample latitude for judicial factfinding that does not even arguably raise any Sixth Amendment issue." *Id.* at 772. Thus, Justice Stevens' dissent also reinforces the conclusion that the Sixth Amendment permits judicial discretion in imposing a sentence within a statutory range authorized by the jury's verdict.

¶16     The Supreme Court's recent Sixth Amendment jurisprudence, from *Jones* through *Booker*, leads inexorably to the conclusion that the Sixth Amendment does not remove from a trial judge the traditional sentencing discretion afforded the judge, so long as the judge exercises that discretion within a sentencing range established by the fact of a prior conviction, facts found by a jury, or facts admitted by a defendant. Once a

12

jury finds the facts legally essential to expose a defendant to a statutory sentencing range, the sentencing judge may consider additional factors in determining what sentence to impose, so long as the sentence falls within the established range.

**B.**

¶17    We recently recognized that *Blakely* implicates Arizona's general felony sentencing scheme as well. *State v. Brown (McMullen)*, 209 Ariz. 200, 203 ¶ 12, 99 P.3d 15, 18 (2004). In *Brown (McMullen)*, we held that, under Arizona law, the statutory maximum sentence for *Apprendi* purposes in a case in which no aggravating factors have been proved to a jury beyond a reasonable doubt is the presumptive sentence established in A.R.S. § 13-701.C.1 (2004). *Id.* Because of the unique procedural posture of the *Brown (McMullen)* case, however, we declined to address "the full implications of *Apprendi* and its progeny for the Arizona sentencing scheme." *Id*. at ¶ 15. Instead, we opted to later address additional questions "in the context of a case in which [a] relevant issue is squarely presented, properly briefed, and addressed by the courts below." *Id.* at 203-04 ¶ 15, 99 P.3d at 18-19. The present case provides an opportunity to address one such question.

**III.**

¶18    Under *Blakley*, a jury must find beyond a reasonable doubt any fact that is "legally essential to the punishment."

542 U.S. at ___, 124 S. Ct. at 2543. This case requires us to determine what facts are "legally essential" for an aggravated sentence to be imposed upon a defendant pursuant to A.R.S. § 13-702.

¶19     In Arizona, a defendant convicted of a felony faces a presumptive sentence pursuant to A.R.S. § 13-701 (Supp. 2000). Under the statutes in force at the time of Martinez' sentencing, a judge could increase or decrease a defendant's presumptive sentence within a range established by A.R.S. § 13-702.A only if "the circumstances alleged to be in aggravation or mitigation of the crime are found to be true by the trial judge." A.R.S. § 13-702.B. After listing the aggravating and mitigating factors that a court must consider, the statute further provides:

> In determining what sentence to impose, the court shall take into account the amount of aggravating circumstances and whether the amount of mitigating circumstances is sufficiently substantial to call for the lesser term. If the court finds aggravating circumstances and does not find any mitigating circumstances, the court shall impose an aggravated sentence.

*Id.* § 13-702.D.

¶20     Martinez interprets this statutory scheme to mean that a defendant is not eligible for an aggravated sentence until *all* aggravating factors that will be relied upon in sentencing have been found beyond a reasonable doubt by the jury. This is so, avers Martinez, because the language in section 13-702.D

14

requires a sentencing judge to balance all the aggravators and mitigators in determining what sentence to impose. According to Martinez, because the maximum sentence he could have received depended upon the quantity and quality of the aggravators, each aggravator relied upon by a judge in sentencing is a fact that increases the penalty, and all such facts are legally essential to his punishment. Therefore, Martinez contends, each aggravating factor must be found by a jury beyond a reasonable doubt.

¶21 Martinez' interpretation of the statutes conflates the concept of the maximum potential sentence to which a defendant is exposed with the actual sentence imposed. The Supreme Court has made clear that only those factors that increase the maximum potential sentence to which a defendant is exposed are "legally essential" for Sixth Amendment purposes. Under Arizona's sentencing scheme, once a jury implicitly or explicitly finds one aggravating factor, a defendant is exposed to a sentencing range that extends to the maximum punishment available under section 13-702. *See Brown (McMullen)*, 209 Ariz. at 202 ¶ 11, 99 P.3d at 17 ("Section 13-702(A) allows an increase of this presumptive sentence to a maximum [sentence] . . . upon a finding of *one or more* of the aggravating circumstances set forth in § 13-702(C).") (emphasis added). Under those circumstances, a trial judge has discretion to impose any

15

sentence within the statutory sentencing range. Thus, a jury finding of a single aggravating factor establishes the facts legally essential to expose the defendant to the maximum sentence prescribed in section 13-702.

**IV.**

**¶22**      We recognize that we rejected a similar argument proffered by the State in *State v. Ring*, 204 Ariz. 534, 561 ¶ 87, 65 P.3d 915, 942 (2003) (*Ring III*).  There, the State argued that if it established any single aggravating factor under A.R.S. § 13-703 in conformity with the Sixth Amendment, the defendant became "death eligible," and a trial judge could then find additional aggravating factors.  In rejecting the State's argument, we stated:

> A narrow reading of *Ring II* may permit a judge to decide the existence of additional aggravating factors in the circumstances described by the State. As the State contends, once the government establishes any aggravating factor, a defendant becomes "death eligible" in the strict sense, and establishing additional aggravating factors does not render a defendant "more" death eligible.  In our view, however, *Ring II* should not be read that narrowly. Although the Court there considered a death sentence based upon the existence of a single aggravating factor, we conclude that *Ring II* requires a jury to consider all aggravating factors urged by the state and not either exempt from *Ring II*, implicit in the jury's verdict, or otherwise established beyond a reasonable doubt.

*Id.* at 561-62 ¶ 88, 65 P.3d at 942-43.

16

**¶23**      We regard our opinion in *Ring III* as distinguishable for two reasons.  First, in *Ring III*, we sought to interpret the Supreme Court's decision in *Ring II* and concluded that the Court intended to require that a jury decide all aggravating factors. Since our decision in *Ring III*, we have gained the benefit of additional United States Supreme Court opinions, and both *Blakely* and *Booker* clarify that, at least in the non-capital context, a jury need find only that fact or those facts that are "legally essential" to expose a defendant to a particular sentencing range.

**¶24**      Second, in *Ring III*, we considered the statutory scheme peculiar to capital sentencing in Arizona, rejecting the State's "single aggravator" argument in part because

> the procedures urged by the State do not reflect any
> sentencing procedure ever adopted by our legislature.
> In both the superseded and current capital sentencing
> schemes, the legislature assigned to the same fact-
> finder responsibility for considering both aggravating
> and mitigating factors, as well as for determining
> whether the mitigating factors, when compared with the
> aggravators, call for leniency.  Neither a judge,
> under the superseded statutes, nor the jury, under the
> new statutes, can impose the death penalty unless that
> entity concludes that the mitigating factors are not
> sufficiently substantial to call for leniency.  The
> process involved in determining whether mitigating
> factors prohibit imposing the death penalty plays an
> important part in Arizona's capital sentencing scheme.

204 Ariz. at 562 ¶ 89, 65 P.3d at 943 (citations omitted).  In response to *Ring II*, the Arizona Legislature adopted a revised capital sentencing scheme designed to conform Arizona law to the

17

*Ring II* mandate. *See id.* at 545 ¶ 13, 65 P.3d at 926. The legislature chose not to split between fact-finders the duties of finding aggravating and mitigating factors and balancing those factors to determine whether the death sentence is appropriate. Instead, the legislature left these duties in the hands of only one fact-finder in both the superseded and the revised statutes.

¶25    Arizona's non-capital sentencing scheme stands in contrast to the capital sentencing scheme discussed in *Ring III*. As the court of appeals pointed out, "Arizona's *non-capital* felony sentencing provisions *have* accommodated a scheme where some factual determinations which increase a defendant's sentence are found by the jury while others are found by the judge, with the ultimate sentencing decision made by the latter." *Martinez*, 209 Ariz. at 285 ¶ 19, 100 P.3d at 35. As of the time of Martinez' sentencing, the Arizona Legislature had not revised A.R.S. § 13-702 in light of the Supreme Court's Sixth Amendment holdings.[4]    Thus, unlike the capital sentencing

---

[4]    Following oral argument in this case, the legislature amended A.R.S. §§ 13-702 and 13-702.01 to conform them to the Supreme Court's recent Sixth Amendment jurisprudence. *See* 2005 Ariz. Sess. Laws, ch. 20, §§ 1-2.    The amended statutes are consistent with the conclusion we reach today.    The statutes bifurcate responsibility for finding aggravating factors between the jury, which must find at least one aggravating factor beyond a reasonable doubt, and the judge, who may then find additional aggravating factors by a preponderance of the evidence. *See id.* § 1. ("If the trier of fact finds at least one aggravating

18

provisions reviewed in *Ring III*, Arizona's non-capital sentencing statutes provide no indication that the legislature intended to vest responsibility for finding all aggravating facts in a single factfinder.[5]

**V.**

¶26      The Sixth Amendment requires that a jury find beyond a reasonable doubt, or a defendant admit, any fact (other than a prior conviction) necessary to establish the range within which a judge may sentence the defendant.  If, however, additional facts are relevant merely to the exercise of a judge's discretion in determining the specific sentence to impose on a defendant *within* a given statutory sentencing range, the Sixth Amendment permits the judge to find those facts by a preponderance of the evidence.  Under A.R.S. § 13-702, the existence of a single aggravating factor exposes a defendant to

_____

circumstance, the trial court may find by a preponderance of the evidence additional aggravating circumstances.").

[5]    We also note that determining aggravating factors in a capital case serves a somewhat different purpose than that served by determining aggravating factors in non-capital cases. The Eighth Amendment to the United States Constitution requires that aggravating factors in capital cases must "genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." *Zant v. Stephens*, 462 U.S. 862, 877 (1983).  In non-capital sentencing, however, aggravating factors serve only to establish the range of sentence and do not involve Eighth Amendment issues.

an aggravated sentence.  Therefore, once a jury finds or a defendant admits a single aggravating factor, the Sixth Amendment permits the sentencing judge to find and consider additional factors relevant to the imposition of a sentence up to the maximum prescribed in that statute.

¶27     In this case, the sentencing judge relied upon eight aggravating factors in imposing aggravated sentences for Martinez' burglary and theft convictions.  The jury implicitly found one of those aggravators, the severe injuries and death of the victim, when it convicted Martinez of first degree murder.[6] Because at least one aggravating factor was implicit in the jury's verdict, the verdict exposed Martinez to a maximum sentence of seven years imprisonment each for the burglary and theft convictions.  *See* A.R.S. § 13-702.A.  The trial court's consideration of additional aggravating factors in imposing a sentence within this range did not violate *Blakely*.

**VI.**

¶28     For the foregoing reasons, we affirm that portion of the court of appeals opinion upholding the trial court's

---

[6]    A.R.S. § 13-702.C.1 includes, as an aggravating factor, the "[i]nfliction or threatened infliction of serious physical injury."  A.R.S. § 13-105.34 (2000) defines "serious physical injury" as including "physical injury which creates a reasonable risk of death."  No one in this case argues that injury that actually results in death falls outside this definition.

20

judgment imposing aggravated sentences for Martinez' theft and burglary convictions.

_____
Ruth V. McGregor, Chief Justice

CONCURRING:

_____
Rebecca White Berch, Vice Chief Justice

_____
Michael D. Ryan, Justice

_____
Andrew D. Hurwitz, Justice

_____
Charles E. Jones, Justice (Retired)