IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | 2 CA-CR 2006-0002 |
| | ) | DEPARTMENT A |
| Appellee, | ) | |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| ROBERT JOSEPH WRIGHT, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR20050749

Honorable Howard Hantman, Judge

AFFIRMED

Terry Goddard, Arizona Attorney General
  By Randall M. Howe and Michael T. O'Toole                          Phoenix
                                                        Attorneys for Appellee


Robert J. Hooker, Pima County Public Defender
  By John F. Palumbo                                                 Tucson
                                                        Attorneys for Appellant


V Á S Q U E Z, Judge.

**¶1** A jury found Robert Joseph Wright guilty of theft of means of transportation, and the trial court suspended the imposition of sentence and placed him on a three-year term of probation. On appeal, he asserts the trial court improperly precluded the testimony of his psychiatric expert witness offered to rebut the mental state element of the offense. For the following reasons, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

**¶2** We view the evidence and all reasonable inferences therefrom in the light most favorable to upholding Wright's conviction. *See State v. Carlos*, 199 Ariz. 273, ¶ 2, 17 P.3d 118, 120 (App. 2001). On January 27, 2005, Keith Deering went to lunch with some friends at a restaurant in Mesa, Arizona. After leaving the restaurant, Deering discovered that his Ford pickup truck was missing. He contacted the Mesa Police Department and reported the vehicle as stolen. Two days later, while on patrol in Ajo, Pima County Deputy Sheriff Kenneth Atwell conducted a license plate check on a Ford pickup truck. When he learned the vehicle had been reported stolen, Deputy Atwell coordinated with other deputies to stop the vehicle. Once deputies initiated the stop, the vehicle immediately pulled over. They instructed the driver, later identified as Wright, to turn off the ignition and place the keys on the roof. Wright responded by placing a screwdriver on the roof of the vehicle. He was handcuffed and placed in the back of a patrol car. While officers were securing the truck, they observed damage to the door lock and ignition column.

**¶3** Sergeant Gary Chatham gave Wright *Miranda*[1] warnings and, after Wright waived his rights, questioned him about how he came to be in possession of the vehicle. Wright told Chatham that someone named Hector had approached and offered to pay him $300 to drive the vehicle to Mexico. After Chatham asked him whether he knew the truck was stolen, Wright stated, "[Y]eah, I thought it could be stolen." Deputy Atwell then drove Wright to Tucson in his patrol car. At trial, Atwell testified that he and Wright had discussed the circumstances surrounding Wright's possession of the truck during the drive to Tucson. During that discussion, Wright stated he did not think it was stolen.

**¶4** A grand jury indicted Wright on one count each of theft of means of transportation, burglary in the third degree, and possession of burglary tools. Wright's first trial ended in a mistrial when a defense witness improperly testified that Wright had suffered brain damage at birth. At his second trial, Wright again sought to introduce expert testimony that had been precluded at the first trial that his "mental capacity was lowered and that he is a naive-type of person." The trial court found that the first trial judge had properly rejected the testimony as an attempt to raise an improper diminished capacity defense, and that ruling was the law of the case. Wright moved for a judgment of acquittal after the state rested its case and again at the end of trial. The court initially denied the motion, but granted Wright's renewed motion on the burglary charge. The jury found Wright guilty of theft of means of transportation and not guilty of possession of burglary tools. The trial

---

[1]*Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966).

court suspended the imposition of sentence and placed him on probation for three years. This appeal followed. We have jurisdiction pursuant to A.R.S. § 12-120.21(A)(1).

## STANDARD OF REVIEW

¶5 On appeal, Wright asserts that the trial court's exclusion of his expert's testimony violated his due process rights under the Fourteenth Amendment to the United States Constitution and constitutes reversible error. Generally, we review a trial court's determination on the admissibility of expert testimony for an abuse of discretion. *State v. Moran*, 151 Ariz. 378, 381, 728 P.2d 248, 251 (1986). However, if the admissibility of the testimony is a question of law, we review its admissibility de novo. *Id*. In this case, the issue is whether the testimony is admissible as "observation evidence" under *Clark v. Arizona*, __ U.S. __, __, 126 S. Ct. 2709, 2724 (2006), to rebut the mental state element of the offense. Although this is a question of law, Wright failed to make this argument at trial. Thus, although we review the trial court's ruling de novo, we will not reverse its decision unless it constitutes fundamental, prejudicial error. *See State v. Martinez*, 210 Ariz. 578, n.2, 115 P.3d 618, 620 n.2, *cert. denied*, __ U.S. __, 126 S. Ct. 762 (2005).

## DISCUSSION

¶6 Wright argues, as the sole basis for challenging his conviction, the trial court erroneously excluded expert testimony that he did not have the mental state necessary to commit the offense. A person commits theft of means of transportation, inter alia, by knowingly controlling another person's means of transportation "with the intent to permanently deprive the person of the means of transportation" or by "knowing or having

4

reason to know that the property is stolen." A.R.S. § 13-1814(A)(1) and (5). To rebut the mens rea or mental state element of the offense, Wright attempted to introduce psychiatric expert testimony about the results of his intelligence/psychological evaluation.

¶7 Wright asked the trial court to reconsider the ruling in the first trial precluding the expert testimony and to allow him "to proceed with a diminished capacity defense." In support of the motion, Wright stated the expert would testify about the "numerous mental deficiencies he diagnosed after evaluating Mr. Wright. These deficiencies included Mr. Wright's low IQ, his deficient test results including but not limited to his common sense, difficulties with detail and his child-like aspirations for the future." Wright acknowledged the testimony had been precluded pursuant to *State v. Mott*, 187 Ariz. 536, 931 P.2d 1046 (1997). But he argued the ruling in *Mott* violated his due process rights "under both the Arizona and United States Constitutions because it prevent[ed] him from a meaningful opportunity to present a complete defense."

¶8 In the alternative, Wright argued the proposed testimony was admissible to help the jury determine whether he formed the requisite mental state "at the time of the offense." He distinguished his case from *Mott*, arguing that "[i]n the *Mott* case the expert was going to testify that the defendant could never form the prerequisite intent. In this case our expert was going to testify that [Wright's] mental capacity was lowered and that he is a naive-type of person." The state argued the first trial judge had "already ruled in favor of the State regarding the requested testimony," and that ruling was "the law of the case." The state also characterized the proposed testimony as supporting "a diminished capacity defense

5

which is expressly prohibited under Arizona law." The trial court agreed and precluded the testimony.

¶9         As a preliminary matter, "[t]he courts of this state are bound by the decisions of [the Arizona Supreme Court] and do not have the authority to modify or disregard [its] rulings." *State v. Smyers*, 207 Ariz. 314, n.4, 86 P.3d 370, 374 n.4 (2004). Therefore, to the extent Wright directly challenges the court's ruling in *Mott*, we reject his argument. And, in any event, the United States Supreme Court has approved the central holding of *Mott*, concluding that Arizona's exclusion of the diminished capacity defense does not violate due process. *Clark*, __ U.S. at __, 126 S. Ct. at 2716.

¶10        In *Mott*, our supreme court rejected the diminished capacity defense and held testimony of a mental health professional about a defendant's mental incapacity owing to a mental disease or defect is only admissible in the context of an insanity defense. 187 Ariz. at 540-41, 931 P.2d at 1050-51. In the absence of an insanity defense, the court concluded such evidence is inadmissible to challenge the element of mens rea, that is, what mental state the state must prove the defendant had for the crime to be committed. *Id*. at 541, 931 P.2d at 1051. But the court noted that its holding did not preclude defendants from offering testimony about their relevant behavioral tendencies and limited its exclusion of evidence to that which concerns a defendant's actual capacity to form a certain mental state. *Id*. at

6

544, 931 P.3d at 1054 (distinguishing the facts of the case before it from those in *State v. Christensen*, 129 Ariz. 32, 628 P.2d 580 (1981)).[2]

**¶11**   Wright relies on *Clark*, which was decided while this appeal was pending.[3] In *Clark*, the Court considered the three different categories of evidence "with a potential bearing" on the mental state element of an offense: observation, mental disease, and mental capacity. __ U.S. at __, 126 S. Ct. at 2724-25. "Observation evidence" includes lay and expert testimony "from those who observed what [a defendant] did and heard what he said." *Id.* It includes testimony of an expert witness about a defendant's "tendency to think in a certain way and his behavioral characteristics." *Id*. at __, 126 S. Ct. at 2724. "[M]ental-disease evidence" consists of opinions that the defendant "suffer[s] from a mental disease with features described by the witness." *Id.* at __, 126 S. Ct. at 2725. And "capacity evidence" is evidence of a defendant's "ability to form a certain state of mind or motive, understand or evaluate one's actions, or control them." *Id.* at __ n.7, __, 126 S. Ct. at 2720 n.7, 2725. The Court held observation evidence, even from an expert, is admissible to show a defendant did not have the requisite mental state to commit the charged offense. *Id*. at __, 126 S. Ct. at 2726.

---

[2]We note Wright did not argue below that the testimony was admissible as character trait evidence under *Christensen*. Therefore, we decline to address the testimony's admissibility on that basis.

[3]Even though the trial court did not have the benefit of *Clark v. Arizona*, __ U.S. __, 126 S. Ct. 2709 (2006), we apply it in this case because it was decided while the appeal was pending. *See State v. Aleman*, 210 Ariz. 232, ¶ 22, 109 P.3d 571, 578 (App. 2005).

7

¶12　　　In sum, the Court in *Clark* held *Mott* does not violate the Fourteenth Amendment guarantee of due process in restricting mental disease and mental capacity evidence to an insanity defense and in precluding such evidence when offered to challenge the mens rea element. __ U.S. at __, __, 126 S. Ct. at 2716, 2727 (citing *Mott*'s discussion of *Christensen*). The Court stated, "It is clear that *Mott* itself imposed no restriction on considering evidence of the first sort, the observation evidence." __ U.S. at __, 126 S. Ct. at 2726. Although, in *Clark*, the Court was uncertain whether the trial court had also precluded observation evidence, it stated: "Nothing that we hold here is authority for restricting a factfinder's consideration of observation evidence indicating state of mind at the time of a criminal offense." __ U.S. at __ n.34, 126 S. Ct. at 2728-29 n.34. This type of evidence may not be restricted to an insanity defense. *Id*. at __, 126 S. Ct. at 2727.

¶13　　　Wright now argues that his expert's proposed testimony was observation evidence and was improperly excluded by the trial court. The state argues Wright has waived all but fundamental error review because this theory was not argued to the trial court. Based on our review of the record, we agree that Wright generally challenged the *Mott* rule rejecting the diminished capacity defense, but did not argue below that the trial court had improperly precluded the type of observation evidence admissible under *Mott*.[4]

---

[4]*Clark* did not announce a new rule, and although the labels the Court used to describe categories of evidence may be new, the categories themselves are not. Wright's argument below was confined to a direct challenge to *State v. Mott*, 187 Ariz. 536, 931 P.2d 1046 (1997), and did not, in any way, suggest the testimony was admissible under *Mott*.

8

**¶14** Because Wright failed to raise this ground below, he has "forfeit[ed] the right to obtain appellate relief unless [he] prove[s] that fundamental error occurred." *State v. Martinez*, 210 Ariz. 578, n.2, 115 P.3d 618, 620 n.2, *cert. denied*, __ U.S. __, 126 S. Ct. 762 (2005). Fundamental error is "'error going to the foundation of the case, error that takes from the defendant a right essential to [the] defense, and error of such magnitude that the defendant could not possibly have received a fair trial.'" *State v. Henderson*, 210 Ariz. 561, ¶ 19, 115 P.3d 601, 607 (2005), *quoting State v. Hunter*, 142 Ariz. 88, 90, 688 P.2d 980, 982 (1984). "To prevail under this standard of review, a defendant must establish both that fundamental error exists and that the error in his case caused him prejudice." *Id.* ¶ 20. "Before we may engage in a fundamental error analysis, however, we must first find that the trial court committed some error." *State v. Lavers*, 168 Ariz. 376, 385, 814 P.2d 333, 342 (1991).

**¶15** We therefore must determine whether the proposed testimony of Wright's expert falls into the category of observation evidence, which may be admitted short of an insanity defense to rebut the mens rea element, or capacity evidence, which may not. Observation evidence includes evidence of a defendant's behavior, statements, and expressions of belief around the time of the offense. *Clark*, __ U.S. at __, 126 S. Ct. at 2724. As the Court put it in *Clark*, an expert witness may offer observation evidence such as a "description[] of a defendant's tendency to think in a certain way or his behavioral characteristics." *Id.* at __, 126 S. Ct. at 2726. Such testimony is distinct from an expert's opinion about a defendant's mental disease (whether a defendant suffers from a mental

9

disease or defect) or mental capacity (whether the disease or defect leaves a defendant incapable of forming a particular mental state necessary to the commission of the offense). *Id.* These latter types of testimony continue to be inadmissible, unless used to support an insanity defense. "*Mott* is meant to confine to the insanity defense any consideration of characteristic behavior associated with mental disease." ___ U.S. at __, 126 S. Ct. at 2727, *citing Mott*, 187 Ariz. at 544, 931 P.2d at 1054.

¶16        In this case, the state was required to prove that Wright had controlled another person's means of transportation either "knowing or having reason to know that the property [was] stolen" or "with the intent to permanently deprive the person of the means of transportation." § 13-1814(A)(1) and (5). Wright's offer of proof bearing on the issue of his mental state consisted of his expert's report, which stated that, in the expert's opinion, Wright had borderline to low average intelligence and suffered from attention-deficit/hyperactivity disorder, a learning disorder, and an anxiety disorder. His offer of proof did not connect any of these diagnoses to whether or not Wright knew or should have known the vehicle was stolen or intended to permanently deprive the victim of the vehicle. Therefore, Wright failed to link the evidence to the behavioral characteristics relevant to the required mental state.

¶17        Admissible observation evidence bears on a defendant's state of mind at the time a crime was committed, "as distinct from professional mental-disease or capacity evidence going to ability to form a certain state of mind during a period that includes the time of the offense charged." *Clark*, __ U.S. at __ n.34, 126 S. Ct. at 2729 n.34. The

10

proposed testimony of Wright's expert encompassed his opinions about Wright's mental capacity generally and did not constitute observation evidence about Wright's relevant behavioral characteristics bearing on his state of mind at the time of the offense. The trial court did not err, fundamentally or otherwise, in precluding the testimony of Wright's psychiatric expert.[5]

**¶18**        We affirm.

_____
                                   GARYE L. VÁSQUEZ, Judge

CONCURRING:


_____
JOHN PELANDER, Chief Judge


_____
JOSEPH W. HOWARD, Presiding Judge

---

[5]Having made this determination, we need not consider the state's additional implicit argument that the testimony of Wright's expert about his subjective mental state was irrelevant in any event because he could also have been found guilty under the statute's objective standard.