NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

CHRISTOPHER ADAM ROSS, *Appellant.*

No. 1 CA-CR 13-0064

FILED 10-16-2014

Appeal from the Superior Court in Maricopa County
No.  CR2011-142440-001
The Honorable Robert E. Miles, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Craig W. Soland
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Louise Stark
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Patricia K. Norris and Judge John C. Gemmill joined.

---

**W I N T H R O P**, Judge:

¶1        Christopher Adam Ross appeals his convictions and sentences for first-degree murder, first-degree burglary, and kidnapping. Ross filed a timely notice of appeal, and we have jurisdiction pursuant to Arizona Revised Statutes sections 12-120.21(A)(2), 13-4031, and 13-4033(A). For the following reasons, we affirm.

**ANALYSIS**

¶2        Ross argues that the trial court abused its discretion in denying his post-trial, presentencing motions for change of counsel, and in failing to conduct sufficient inquiry into the alleged "irreconcilable differences" and "lost confidence and trust that formed the basis of the motions." The Sixth Amendment guarantees a criminal defendant the right to be represented by competent counsel. U.S. Const. amend. VI; *State v. Moody,* 192 Ariz. 505, 507, ¶ 11, 968 P.2d 578, 580 (1998). The Sixth Amendment does not entitle a defendant to "counsel of [his or her] choice, or to a meaningful relationship with his or her attorney." *Moody,* 192 Ariz. at 507, ¶ 11, 968 P.2d at 580 (citation omitted).

       I.        *The trial court did not abuse its discretion when it denied Ross's post-trial, presentencing motions for change of counsel.*

¶3        A trial court is required to appoint new counsel only if there exists an irreconcilable conflict or an entirely broken relationship between the defendant and counsel. *State v. Cromwell,* 211 Ariz. 181, 186, ¶ 29, 119 P.3d 448, 453 (2005). "A single allegation of lost confidence in counsel does not require the appointment of new counsel, and disagreements over defense strategies do not constitute an irreconcilable conflict." *Cromwell,* 211 Ariz. at 186, ¶ 29, 119 P.3d at 453. A claim of ineffective assistance of counsel must be more than a disagreement over trial strategy, or a general personality conflict, and the defendant bears the burden of presenting evidence of "severe and pervasive conflict" to prove there is irreconcilable conflict or a total breakdown of communication with his attorney. *State v.*

*Hernandez*, 232 Ariz. 313, 318, ¶ 15, 305 P.3d at 378, 383 (2013) (internal punctuation and citations omitted). We review the trial court's decision to deny a request for new counsel for abuse of discretion. *Cromwell*, 211 Ariz. at 186, ¶ 27, 119 P.3d at 453 (citation omitted).

**¶4**        In support of his post-trial motions to change counsel, Ross alleged only that he was not able to communicate with his attorney "effectively enough" and that he would not "feel comfortable" continuing with his attorney for sentencing, because of the "irreconcilable differences" that had arisen because of his belief that this attorney had provided ineffective assistance during trial and in post-verdict compromises.[1] In an *ex parte* hearing on the first such motion, Ross read a lengthy written statement into the record, contending that his counsel had provided ineffective assistance in numerous instances, requiring reversal of his convictions. Specifically, Ross claimed his counsel failed to advise him that he had ten working days to file a motion for new trial, advised Ross not to call witnesses that he wanted called, advised Ross that if he testified, counsel would not ask him any questions on redirect because counsel did not believe Ross's proposed testimony regarding the facts in his case, and failed to ask for an instruction "that no person should be convicted upon suspicion or mere probability or from the fact that he may have had an opportunity to commit the crime."

**¶5**        The trial court listened to his statement and asked questions before denying this first motion to change counsel, reasoning that Ross's claims all related to an ineffective assistance of counsel claim, which could be raised later during different proceedings. Before sentencing Ross, the trial court made further inquiries of both Ross and his counsel, and stated that it would deny Ross's second motion to change counsel based on his claim of ineffective assistance of his counsel in agreeing to post-verdict compromises – which the trial court had already addressed in the earlier hearing – for the same reason.

**¶6**        "[A] trial judge has a duty to inquire as to the basis of a defendant's request for substitution of counsel." *State v. Torres*, 208 Ariz. 340, 343, ¶ 7, 93 P.3d 1056, 1059 (2004). "The nature of the inquiry will depend upon the nature of the defendant's request." *Torres*, 208 Ariz. at 343, ¶ 8, 93 P.3d at 1059. We find no abuse of discretion in the extent of the

---

[1]        The compromises related to Ross admitting to a finding of dangerousness relative to the burglary and kidnapping counts, and to the existence of three prior felony convictions.

trial court's inquiry into the nature of the claimed conflict between the defendant and his appointed counsel. The facts of this case distinguish it from the facts in *Torres*, which our supreme court held required the trial judge to conduct additional inquiry. In *Torres*, the defendant claimed several issues with his counsel, including lack of trust, communication, and confidentiality, and that counsel no longer acted professionally. *Torres,* 208 Ariz. at 342, ¶ 2, 93 P.3d at 1058. The judge summarily denied Torres's motion for new counsel, suggesting only that he contact the public defender's office. *Id.* Our supreme court held that the court abused its discretion in denying the motion without inquiring into the "specific factual allegations that raised a colorable claim that he had an irreconcilable conflict with his appointed counsel." *See Torres,* 208 Ariz. at 343, ¶ 9, 93 P.3d at 1059. In this case, the trial court asked Ross questions about his claimed irreconcilable differences with his attorney and listened to Ross's numerous claims of ineffective assistance of counsel before denying his motions. The trial court's inquiry into the nature of Ross's claims was sufficient under the circumstances. *See Torres,* 208 Ariz. at 343, ¶ 8, 93 P.3d at 1059.

**¶7** Further, the trial court did not abuse its discretion in denying Ross's motions to change counsel. Ross's motions were based solely on Ross's disagreement with his counsel's trial strategy – claims based on his view that his attorney had not provided him with an effective defense at trial, or with proper advice before he admitted he had prior convictions and that the burglary and kidnapping offenses were dangerous offenses. "[D]isagreements over defense strategies do not constitute an irreconcilable conflict." *Cromwell,* 211 Ariz. at 186, ¶ 29, 119 P.3d at 453 (citations omitted). Ross's claims of ineffective assistance of counsel during trial and in the post-verdict proceeding do not rise to the level of an irreconcilable conflict, in light of his tacit admission that he could communicate with his attorney, just simply not "effectively enough" to subjectively feel comfortable in going forward with him. In short, Ross failed to meet his burden to show the "severe and pervasive conflict with his attorney" or "such minimal contact with the attorney that meaningful communication was not possible" that is necessary for appointment of new counsel. *See Hernandez*, 232 Ariz. at 318, ¶ 15, 305 P.3d at 383.[2] The trial

---

[2] We recognize that the trial court should also consider whether new counsel would be confronted with the same conflict, the timing of the motion, inconvenience to witnesses, the time period already elapsed between the alleged offense and trial, the proclivity of the defendant to

court accordingly did not abuse its discretion in denying Ross's post-verdict motions to change counsel.

¶8        We are not persuaded otherwise by the information provided by Ross's attorney in his two pleadings titled *Ex Parte* Motion to Determine Counsel, the first filed a month before sentencing and the second filed the day before sentencing.  In the first *ex parte* motion, submitted to the presiding judge of the trial court, Ross's attorney outlined various bases for Ross's dissatisfaction with him, and informed the presiding judge that the trial judge had denied the motion for new counsel.  Ross's attorney also noted his concern over a potential conflict in his office's representation of a jailhouse informant who had just recently given police the name of a woman who may have been involved in the murder of which Ross had been convicted.  The presiding judge suggested that any possible conflict might be resolved by referring the jailhouse informant to other counsel, but concluded that the trial judge was the appropriate party to rule on this motion.

¶9        Defense counsel did not reurge his first *ex parte* motion with the trial judge, but instead filed with the trial judge a second *ex parte* motion the day before sentencing, seeking a determination of counsel based on (1) Ross's claim that, notwithstanding an explicit colloquy with the trial court, he had been misled into admitting the dangerous nature of the burglary and kidnapping offenses and the existence of his prior convictions as aggravating circumstances; and (2) the potential dilemma that might arise if a jury trial on aggravating circumstances were allowed, in light of Ross's intention to testify "in a manner that will ethically challenge counsel's ability to develop his testimony."  In this motion, Ross's attorney asked the court to "consider appointing new counsel in order to determine whether current counsel misled Mr. Ross, and to allow Mr. Ross to present testimony during any potential new trial on aggravating circumstances."

---

change counsel, and the quality of counsel.  *See Hernandez*, 232 Ariz. at 321, ¶ 34, 305 P.3d at 386.  The trial court here implicitly found that some of these factors were not applicable in light of the already completed trial, and focused instead on the ineffective assistance of counsel complaints, implicitly recognizing that new counsel would likely be faced with Ross's dissatisfaction with the manner in which the case had been tried.  The trial court correctly concluded that these issues were "more properly analyzed in post-conviction relief proceedings."  *See Hernandez*, 232 Ariz. at 321 n.3, ¶ 33, 305 P.3d at 386 n.3 (citation omitted).

At this point, Ross's attorney concluded, "[t]he relationship has reached a level that the conflict is now irreconcilable."

¶10         The trial judge denied this second motion to determine counsel, reasoning that counsel's claims did not affect his representation at sentencing, and Ross's potential claim of ineffective assistance of counsel could be raised later during a Rule 32 proceeding.  We conclude that the trial court did not abuse its discretion in denying defense counsel's motion to determine counsel, and the reasons defense counsel cited in his motion – which were simply reiterations of Ross's arguments – did not warrant any additional inquiry into, or granting of, Ross's motions to change counsel.

> II.         *The trial court did not fundamentally err in failing to explicitly inform Ross that his admission of his prior felony convictions allowed the court to find and consider additional aggravating circumstances in imposing the sentence.*

¶11         Ross argues that the trial court fundamentally erred in failing to conduct "a complete colloquy" before accepting Ross's admission to the existence of three prior felony convictions for use as aggravating circumstances, by not expressly informing him that this admission allowed the court to consider additional aggravating circumstances in sentencing him.  Following the jury verdict, Ross admitted the existence of three prior felony convictions and the dangerous nature of the burglary and kidnapping offenses, pursuant to an agreement that the prior convictions would be used only as aggravating circumstances.  The agreement resulted in Ross being sentenced for the kidnapping and burglary offenses as a dangerous, non-repetitive offender, exposing him to an aggravated sentence of 21 years, instead of as a repetitive offender, which could have exposed him to a maximum sentence of 28 years.  *Compare* A.R.S. § 13-704(A) (10.5 years presumptive, 21 years maximum sentence for class 2 dangerous felony) *with* A.R.S. § 13-703(C) and (J) (15.75 years presumptive, 28 years maximum, 35 years aggravated sentence for class 2 felony with two or more prior felony convictions).

¶12         Before finding that the admissions had been made knowingly, intelligently, and voluntarily, the trial court ascertained that Ross understood that his admissions would expose him to sentences on the burglary and kidnapping convictions of up to 21 years.  Before accepting his admissions to the prior convictions (and to the dangerous nature of the kidnapping and burglary offenses), the trial court confirmed that Ross was making a knowing and intelligent waiver of his constitutional rights to a

jury trial, to require the state to prove dangerousness and the existence of the prior convictions, to representation by counsel, to confront witnesses, and to testify on his own behalf. The trial court also confirmed with Ross that he had been convicted of the three prior felony offenses, that he had been represented by an attorney at the time, and that no threats had been made to force these admissions. Defense counsel did not object to the extent of the colloquy.

¶13 Two weeks before sentencing, the trial court requested simultaneous briefing on whether it could consider additional aggravating circumstances in sentencing Ross as a result of Ross's admission to the single aggravating circumstance of the prior felony convictions. The trial court informed the parties that it did not think there had been "a specific relinquishment of the right to trial on the aggravators" in the colloquy with Ross, but wondered whether that was necessary in light of the decision in *State v. Martinez*, 210 Ariz. 578, 115 P.3d 618 (2005). After reviewing the requested briefing, the court concluded it could consider *any* additional aggravating circumstances "to determine where in an aggravated range the sentence should fall." The court subsequently considered as aggravating circumstances the three prior felonies, the death of the victim, the harm to the victim's family, and the cruel and graphic nature of the offenses. After identifying several mitigating circumstances, the court found that "*any and all* of the aggravating circumstances justify a term greater than the presumptive," and sentenced Ross to the maximum terms of 21 years on the burglary and kidnapping convictions, to be served concurrently with a life term with possibility of release after 25 years on the first-degree murder conviction. (Emphasis added.).

¶14 Because Ross failed to object to the extent of the colloquy, we review this claim for fundamental error only, in which defendant bears the burden of establishing error, that the error was fundamental, and that he was prejudiced thereby. *See State v. Henderson*, 210 Ariz. 561, 568, ¶ 22, 115 P.3d 601, 608 (2005). Error is fundamental when it goes to the foundation of the defendant's case, takes from him a right essential to his defense, and is error of such magnitude that he could not possibly have received a fair trial. *Id.* at 567, ¶ 19, 115 P.3d at 607. "A complete failure to afford a Rule 17.6 colloquy is fundamental error." *State v. Morales*, 215 Ariz. 59, 61, ¶ 10, 157 P.3d 479, 481 (2007). To prove prejudice arising from the absence of a colloquy, the defendant must show that he would not have admitted the prior convictions if the colloquy had been given. *Morales*, 215 Ariz. at 62, ¶ 11, 157 P.3d at 482.

¶15 Ross has not met his burden. A trial court may accept a defendant's admission to a prior conviction only if it "advise[s] the defendant of the nature of the allegation, the effect of admitting the allegation on the defendant's sentence, and the defendant's right to proceed to trial and require the State to prove the allegation." *State v. Young*, 230 Ariz. 265, 268, ¶ 8, 282 P.3d 1285, 1288 (App. 2012) (citations and internal punctuation omitted); *see also Boykin v. Alabama*, 395 U.S. 238, 242-43 n.5 (1969) (holding due process requires voluntary and intelligent admission to the existence of a prior conviction); *Morales*, 215 Ariz. at 61, ¶ 8, 157 P.3d at 481 (2007) (stating Arizona Criminal Procedure Rule 17.6 is designed to ensure "that the *Boykin* directive is fulfilled when a defendant admits a prior conviction"). The required information includes: (1) "[t]he nature of the charge to which the plea is offered"; (2) "[t]he nature and range of possible sentence for the offense to which the plea is offered, including any special conditions regarding sentence, parole, or commutation imposed by statute"; (3) "[t]he constitutional rights which the defendant foregoes by pleading guilty"; and (4) "[t]he right to plead not guilty." Ariz. R. Crim. P. 17.2.

¶16 The trial court clearly satisfied these requirements before accepting Ross's admission to his three prior felony convictions. The trial court informed Ross he had the right to a trial on the existence of the prior convictions, the right to representation by counsel, and the right to confront witnesses and to testify on his own behalf. Ross acknowledged that he understood those rights and agreed to waive them. Ross also acknowledged that he understood that his admission to the dangerous nature of the offenses and the existence of the prior convictions as aggravating circumstances exposed him to a sentence of 21 years. Moreover, the trial court's explicit finding that "any and all of the aggravating circumstances justify a term greater than the presumptive" further diminishes Ross's claim, as the use of the admitted prior convictions was not the sole basis for the court's sentence.

¶17 It has long been the law in Arizona that "once a jury finds or a defendant admits a single aggravating factor, the Sixth Amendment permits the sentencing judge to find and consider additional factors relevant to the imposition of a sentence up to the maximum prescribed in that statute." *Martinez*, 210 Ariz. at 585, ¶ 26, 115 P.3d at 625; *see also* A.R.S. § 13-701(F). This is because "the Sixth Amendment does not remove from a trial judge the traditional sentencing discretion afforded the judge, so long as the judge exercises that discretion within a sentencing range established by the fact of a prior conviction, facts found by a jury, or facts admitted by a defendant." *Martinez*, 210 Ariz. at 583, ¶ 16, 115 P.3d at 623.

Thus, once the trial court informed Ross of the range of sentence to which he would be exposed by admitting the dangerous nature of his offenses and the existence of the prior convictions as aggravating factors, and accepted his admission to the prior convictions, it could exercise its discretion to find any additional factors relevant to impose a sentence up to the maximum prescribed in the statute. *See id.*, 210 Ariz. at 585, ¶ 26, 115 P.3d at 625. Moreover, implicit in the jury's verdict that Ross was guilty of first-degree murder was a finding that Ross caused the victim's death. The use of this jury finding as an aggravating factor also allowed the trial judge to find and consider additional factors in aggravating Ross's sentences on the kidnapping and burglary convictions. *See id.*, 210 Ariz. at 583, ¶ 16, 115 P.3d at 623. Under these circumstances, we conclude that the trial court did not fundamentally err in failing to explicitly inform Ross in the Rule 17.6 colloquy that if he admitted the existence of the prior convictions for use as aggravating circumstances, the court could find and consider additional aggravating circumstances in imposing the sentence.

## CONCLUSION

¶18　　　For the foregoing reasons, we affirm Ross's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
F I L E D : gsh