NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

MARK WILLIAM FRANKLIN, *Plaintiff/Appellant*,

*v.*

JASON JOHN CLEMETT, et al., *Defendants/Appellees*.

No. 1 CA-CV 15-0194
FILED 10-25-2016

---

Appeal from the Superior Court in Maricopa County
No. CV2010-033437
The Honorable Dawn M. Bergin, Judge

**AFFIRMED**

---

COUNSEL

Knapp & Roberts, P.C., Scottsdale
By David L. Abney
*Co-Counsel for Plaintiff/Appellant*

Harris, Powers & Cunningham, P.L.L.C., Phoenix
By Joseph D'Aguanno, Frank I. Powers
*Co-Counsel for Plaintiff/Appellant*

Karen L. Lugosi, P.C., Phoenix
By Karen L. Lugosi
*Co-Counsel for Plaintiff/Appellant*

Jones, Skelton & Hochuli, P.L.C., Phoenix
By William D. Holm, Jonathan P. Barnes, Jr.
*Co-Counsel for Defendants/Appellees*

Hill, Hall & DeCiancio, P.L.C., Phoenix
By R. Corey Hill, Ginette M. Hill, Christopher Robbins
*Co-Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

Presiding Judge Patricia K. Norris delivered the decision of the Court, in which Judge Samuel A. Thumma and Judge Margaret A. Downie joined.

---

**N O R R I S**, Judge:

**¶1**        This appeal arises out of a lawsuit filed by Plaintiff/Appellant Mark William Franklin against Defendants/Appellees Jason John Clemett and his wife, and their friend Daniel Blanchard (collectively, unless otherwise specified, "Defendants") to recover damages for injuries he allegedly sustained during a physical altercation he had with Jason Clemett and Daniel Blanchard at a hockey game. A jury trial on Franklin's negligence claim resulted in a verdict for Defendants.

**¶2**        On appeal, Franklin argues the superior court abused its discretion in admitting expert testimony from a defense witness as well as deposition testimony from one of his physicians.[1] Because Franklin has shown no abuse of discretion, we affirm the judgment in favor of the Defendants.

---

[1]In a separate opinion, *Franklin v. Clemett et al.*, 1 CA-CV 15-0194 (Ariz. App. October 25, 2016), filed simultaneously with this memorandum decision, *see* Ariz. R. Sup. Ct. 111 and Arizona Rule of Civil Appellate Procedure ("ARCAP") 28, we reject Franklin's remaining arguments and discuss the factual and procedural background of this case in more detail.

## DISCUSSION

I.      Franklin's Injuries and Malingering

**¶3**            At trial, the parties hotly disputed the existence and extent of Franklin's injuries. Franklin presented evidence he had suffered a traumatic brain injury ("TBI") and other injuries. Two neuropsychologists presented conflicting testimony regarding the existence, extent, and severity of Franklin's alleged TBI. Over Franklin's objection, a defense expert, neuropsychologist Susan Borgaro, Ph.D., testified Franklin was "malingering," while Franklin's expert, neuropsychologist Jason Baker**,** Ph.D., testified he was not.

**¶4**            On appeal, Franklin argues Dr. Borgaro's testimony that he was malingering was inadmissible as a matter of law because it constituted an "expert-witness attack" on his credibility. Assuming Franklin's argument raises a question of law, he has not shown reversible error. *See State v. Wright*, 214 Ariz. 540, 542, ¶ 5, 155 P.3d 1064, 1066 (App. 2007) (citing *State v. Moran*, 151 Ariz. 378, 381, 728 P.2d 248, 251 (1986) (when admissibility of expert opinion testimony raises a question of law, appellate court applies de novo review)).

**¶5**            A witness's credibility is a question of fact for the finder of fact. *State v. Bernstein*, 237 Ariz. 226, 230, ¶ 18, 349 P.3d 200, 204 (App. 2015). Accordingly, an expert witness may not comment or express an opinion on "who is correct or incorrect, who is lying and who is truthful." *Moran*, 151 Ariz. at 382, 728 P.2d at 252 (citation omitted); *see also State v. Lindsey*, 149 Ariz. 472, 475, 720 P.2d 73, 76 (1986) ("even where expert testimony on behavioral characteristics that affect credibility or accuracy of observation is allowed, experts should not be allowed to give their opinion of the accuracy, reliability or credibility of a particular witness in the case being tried"). An expert witness may, however, offer testimony that helps a jury understand the evidence or determine a fact in issue. *See* Ariz. R. Evid. 702 (expert witness may testify on specialized knowledge that will help a jury to understand these factors). Here, Dr. Borgaro's testimony was relevant to the parties' dispute regarding the existence, extent, and severity of Franklin's alleged TBI.

**¶6**            First, Dr. Borgaro's testimony that Franklin was "malingering" was closely tied to her explanation of the tests she had

administered to Franklin, and why she had administered them.[2] Dr. Borgaro testified Franklin told her his TBI, incurred in 2009, was continuing to cause him cognitive problems, such as memory loss and trouble finding words, as well as emotional problems, such as depression, frustration, and anxiety. She explained she reviewed Franklin's medical records and administered several tests, including symptoms validity tests. Dr. Borgaro further explained that tests for malingering are typically administered when a person reports that he or she is experiencing neurological symptoms, such as the symptoms reported by Franklin, and when litigation is involved.

¶7            Second, Dr. Borgaro's testimony that Franklin was malingering was closely tied to her explanation of the test results. As discussed, *see supra* ¶ 6 footnote 2, Dr. Borgaro and Dr. Baker defined malingering in substantially similar terms. At trial, Dr. Borgaro explained that the tests were designed to show whether a person's reported symptoms are neurological in cause and, even if the results indicate the symptoms are not neurologically based, that "doesn't necessarily mean that somebody's making up symptoms." Thus, she explained how Franklin's test results showed discrepancies that were atypical and did not "make sense from a neurological standpoint."

¶8            Third, Dr. Borgaro's testimony that Franklin was malingering helped the jury understand the differences between her opinions and Dr. Baker's opinions, such as her conclusion that the "fake bad scale," one of the symptoms validity tests, demonstrated a 95% statistical probability that Franklin was malingering.

¶9            Fourth, Dr. Borgaro did not comment on Franklin's trial testimony or his credibility; she did not tell the jury that Franklin was untruthful or "fabricating facts" and her testimony did not constitute what our courts have considered to be improper credibility testimony. *See State v. Reimer*, 189 Ariz. 239, 241, 941 P.2d 912, 914 (App. 1997) (abuse of

---

[2]Both Dr. Baker and Dr. Borgaro generally explained that malingering was determined through test results that demonstrated inconsistencies between what a person reports as his or her symptoms and how a person is actually functioning on a daily basis; and both experts generally agreed that malingering was the exaggeration of symptoms for secondary gain such as for a financial incentive. Both experts agreed, however, there was no single test for malingering and both testified extensively on their test results and different methodologies for administering and interpreting the tests.

discretion to allow officer to testify that based on his experience in detecting whether a person is truthful he believed a victim's out-of-court statement regarding defendant's conduct was truthful); *State v. Tucker*, 165 Ariz. 340, 346, 798 P.2d 1349, 1355 (App. 1990) (psychiatrist who answered "hypothetical" questions based on testimony already presented to the jury provided improper opinion testimony by explaining that the victim's testimony was consistent with the crime).

¶10 Instead, Dr. Borgaro's testimony that, from a neurological standpoint "[t]here's no question [Franklin] meets [the] criteria for probable malingering," was focused on Franklin's alleged TBI and his allegedly continuing symptoms, not his credibility. Albeit presented in other contexts, that type of evidence may be admissible. *See State v. Moody*, 208 Ariz. 424, 444-45, ¶¶ 54-58, 94 P.3d 1119, 1139-40 (2004) (superior court did not abuse its discretion in finding defendant competent to stand trial when several experts opined defendant was likely malingering or faking mental illness); *State v. Lewis*, 236 Ariz. 336, 342-43, ¶¶ 17-22, 340 P.3d 415, 421-22 (App. 2014) (presumption of continued incompetency rebutted by evidence defendant was malingering, including "trying to appear mentally ill by exaggerating or feigning symptoms" and evidence of defendant's alleged symptoms did not match his behavior).

¶11 Given this record, the superior court did not commit reversal error in admitting Dr. Borgaro's expert testimony.

II. Admission of Deposition Testimony

¶12 Franklin argues the superior court should not have allowed the Defendants to introduce into evidence the deposition testimony from one of his physicians, in which the physician mentioned Franklin had engaged in anal sex. According to Franklin, the testimony was prejudicial and irrelevant because he had withdrawn his damage claim for sexual dysfunction. Franklin has not shown any abuse of discretion. *See State v. Fillmore,* 187 Ariz. 174, 179, 927 P.2d 1303, 1308 (App. 1996) (citation omitted) (ruling on admission of evidence reviewed for abuse of discretion).

¶13 The superior court admitted this testimony, reasoning that the physician's testimony was admissible, even though Franklin may have withdrawn his claim of sexual dysfunction, because it was relevant to Franklin's broader claim of "lost enjoyment of life as a result of [his] injuries." Further, Franklin has not shown the superior court abused its discretion in concluding the testimony did not pose a danger of being

unduly prejudicial, as the court ordered the parties to use the phrase "sexual relations" instead of the phrase "anal intercourse" during the trial.

¶14 On this record, Franklin has shown no abuse of discretion in the admission of this testimony.

**CONCLUSION**

¶15 For the foregoing reasons, we affirm the superior court's judgment in favor of the Defendants. As the successful parties on appeal, we award the Defendants their costs on appeal contingent upon their compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED: AA